INTERNATIONAL UNION OF OPER-
ATING ENGINEERS, LOCAL 627,
Plaintiff,

v.

Harold ARTHURS, Field Director, Bureau
of Reclamation, Denver, Colo-
rado, et al., Defendants.

Civ. No. 72–851.

United States District Court,
W. D. Oklahoma.

Jan. 24, 1973.

Gerald B. Ellis, Stan P. Doyle, Tulsa, Okl., for plaintiff.

James M. Peters, Asst. U. S. Atty., Oklahoma City, Okl., John R. Little, U. S. Dept. of Interior, Denver, Colo., for defendants.

CHANDLER, District Judge.

## MEMORANDUM OPINION

This matter comes on for decision after trial on the merits on December 19, 1972. The plaintiff claims that the Bureau of Reclamation, a United States Government agency, violated the Davis-Bacon Act [40 U.S.C. § 276a] by refus-ing to incorporate the proper wage scale in the advertised specifications for a contract covering construction of public works. I have heretofore entered Findings of Fact and Conclusions of Law, but feel it is necessary to file this Memorandum in Support of my judgment because of the public interest involved.

### Davis-Bacon Act

Central in this litigation is the Davis-Bacon Act, which provides in pertinent part that:

"The advertised specifications for every contract in excess of $2,000, to which the United States . . . is a party, for construction . . . of public buildings or public works of the United States . . ., and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State, in which the work is to be performed . . ." [40 U.S.C. § 276a].

The purpose of the Davis-Bacon Act is to provide protection to local craftsmen who were losing work to contractors who recruited labor from distant cheap-labor areas. S.Rept. 963, Mar. 17, 1964 (to accompany H.R. 6041), 1964 U.S. Code Congressional and Administrative News, pp. 2339, 2340. Some contractors pay wages according to collective bargaining agreements. But even though these contractors usually are required to pay higher wage scales, they can still compete with non-union contractors for public contract work because of the Davis-Bacon Act prevailing wage scale provision. Noncompliance with the Davis-Bacon Act makes it impossible for all contractors to

compete. There is thus injury to the laborers and mechanics, as well as injury to contractors and labor organizations.

The Secretary of Labor administers the Davis-Bacon Act. One of the rules promulgated by this agency and pertinent to this case involves the modification of wage rates. 29 C.F.R. 1.7(b)(1), as amended, 37 Fed.Reg. 21140 (Oct. 5, 1972).

"All actions modifying an original project wage determination prior to the award of the contract or contracts for which the determination was sought shall be applicable thereto, but modifications received by the Federal agency . . . later than 10 days before the opening of bids shall not be effective except when the Federal agency . . . finds that there is a reasonable time in which to notify bidders of the modification."

Two basic questions that this Court must consider are:

1. Did the Bureau of Reclamation receive the wage modification later than ten days before the opening of bids?

2. Even if the modification was received by the agency less than ten days before the opening of bids, did the agency have a reasonable time in which to notify bidders and if it did was it its duty to do so?

This Court answers these questions in the affirmative for the reasons hereinafter stated.

The Court is aware that the role of a reviewing court is limited in the administrative process. Nevertheless, it is conscious of its obligation to insure that the agency has interpreted and applied the Davis-Bacon Act and the regulations in a rational manner. This means that the statute and rules must be examined in light of the legislative purpose. Frankfurter, Some Reflections On The Reading Of Statutes, 47 Colum. L.Rev. 527 (1947); N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

Where an agency completely ignores the purpose of the controlling statute, as the defendants did in this case, there cannot be any rational basis in law to support its decision. A reviewing court would be doing less than its duty if it failed to set aside the agency action. By holding an agency accountable to its lawful duties, the administrative process will be vindicated.

### Facts of the Case

On October 10, 1972, the Bureau of Reclamation advertised for bids and issued specifications to prospective bidders on its Mountain Park Dam Project located in Kiowa County, Oklahoma, an area within the jurisdiction of this Court. This project involves the construction of a concrete arch dam across Otter Creek. The estimated cost of this project is $2.8 million. Originally the bid opening date was scheduled for November 16, 1972, which was a Thursday. It became necessary, however, for the agency to postpone the bid opening date to a Tuesday, December 12, 1972.

The reason for this delay in opening bids was due to action of the Bureau of Reclamation (to be referred to hereafter as the Bureau). When specifications for the project were being prepared, the Bureau did not make a request to the Secretary of Labor for the proper wage determination. Instead it erroneously elected to use highway construction rates, which turned out to be substantially lower than rates applied to construction work on dams. This was admitted by the Bureau to be an error when it was called to the Bureau's attention by a contractor on October 16, 1972.

Subsequently, the Bureau, on October 18, 1972, made a request to the Secretary of Labor for a wage determination. Bidders were notified that a new wage schedule would be published and the bid opening date was postponed until December 12, 1972. The wage determination was prepared by the Wage Determination Branch, Employment Standards Administration, United States Department of Labor, on November 27, 1972,

which on the same date was mailed to the Denver office of the Bureau. On November 30, 1972, this same office prepared a wage modification for one class of workers—operating engineers. This modification was also mailed to the Denver office of the Bureau on the same date it was prepared.

There is some disagreement as to when the Bureau received the wage determination and the modification. By the testimony of Donald Duck, Deputy Director of the Office of Design and Construction, Bureau of Reclamation, the November 27 wage determination was received in Denver on December 1 and the November 30 wage modification was received on December 4, 1972. Leslie Burnett, Wage Specialist for the Wage Determination Branch of the Department of Labor, testified that the wage determination and modification had been separately mailed from his Dallas, Texas, office. However, Mr. Burnett stated that he had also mailed both the wage determination and the modification in the same envelope and by air mail on December 1, 1972.

This second mailing was necessitated by a call on December 1, from the Bureau's Denver office to the Washington office of the Department of Labor, to the effect that the Bureau had not received the wage determination. Phillip Gloss, in the Washington office, then called Burnett in Dallas and directed him to mail the wage determination to Denver. According to directions, Burnett mailed both the wage determination and the modification by air mail on the same day, December 1, 1972. The Bureau in Denver was then called by Gloss and informed that the wage modification had been mailed along with the wage determination. Based on this testimony, the Court finds that the Bureau had knowledge of the wage modification on December 1, 1972, more than ten days before the scheduled bid opening.

The Bureau rejected the wage modification on the ground that it was not received by that agency until December 4, 1972, which was eight days before the bid opening date. It was determined that there was not sufficient time to notify the prospective bidders and *for them to act upon that modification.* Rule 1.7(b)(1) provides that:

"Modifications received by the Federal Agency later than 10 days before the opening of bids shall not be effective except when the Federal agency finds that there is a *reasonable time in which to notify bidders of the modification.*" (Emphasis added).

Testimony of Mr. Duck disclosed that the Bureau interpreted this rule to mean that any wage rate received by the agency with less than ten days remaining to bid opening was not effective; that the Bureau considered it within its absolute discretion to accept or reject the wage modification in this case. There was testimony from the Bureau that an additional extension of bid opening time might jeopardize a portion of the work that needed to be done prior to flood season. But the Bureau also testified that in rejecting the wage modification, no consideration was given to the effects on the workers involved and no finding was made that there was not a reasonable time in which to notify bidders of the modification.

It was conceded that a supplemental notice to prospective bidders could have been prepared within 24 hours. One contractor who had prepared a bid on this project but who failed to get it filed because of icy road conditions testified that a bid on this project could have been adjusted by a bidder in a single day to take into consideration the wage modification. There were 160 prospective bidders on the list, which included material supply firms as well as prime contractors and subcontractors. Of the 160 prospective bidders, there were 40 prime contractors, and of these, eleven submitted bids.

### Litigation

On December 11, this lawsuit was filed by the plaintiff labor organization, whose members were affected by the

particular wage modification involved. The immediate relief requested by the plaintiff was for a temporary restraining order to hold up the opening of bids until such time as there could be a full hearing. This Court refused to issue an *ex parte* order, but scheduled a hearing for 8:30 A.M. on December 12, 1972. The plaintiff was directed to notify all the parties involved.

When the hearing commenced the Bureau and all other parties defendant had been notified and were represented by Mr. James Peters, Assistant United States Attorney, Oklahoma City.

After hearing statements of the facts and arguments from both sides of the controversy, the Court concluded that a temporary injunction should issue prohibiting the opening of bids and the awarding of the contract until the further order of the Court, and orally issued such an order from the bench.

The parties were aware that the hearing might not be concluded until a short time before 10 o'clock, the time set for the opening of bids, and the Court was advised that Mr. Robert Radcliffe, an employee of the Bureau designated as the person to open the bids in Altus, Oklahoma, would have someone posted at his office to receive notification by telephone as to whether the injunction was issued by the Court.

Because of circumstances surrounding the hearing, the conclusion from the uncontroverted facts that in all probability it would be necessary to enter a permanent injunction upon full hearing of the evidence and that irreparable damage would be caused by the opening of the bids prior to such a final determination if it was necessary to make the injunction permanent, in order to insure that notification would be received prior to the hour set for the opening of the bids, the Court asked a Deputy United States Marshal to come to his chambers adjoining the courtroom and called the number furnished by Mr. Radcliffe as that of his office and personally advised Mrs. Dean Cox, who stated that she was the person posted by Mr. Radcliffe to receive the message, that the order prohibiting the opening of the bids had been entered and that they should not be opened under penalty of the law. The Court also had the Deputy United States Marshal, in his presence, convey the same message to her and she replied that she would notify Mr. Radcliffe.

This message was conveyed to Mrs. Dean Cox at 9:53 A.M., seven minutes before the bids were to be opened. The record does not disclose whether counsel for the defendants conveyed notice to Mr. Radcliffe but from a legal standpoint, notice to counsel was notice to the defendants.

Under these circumstances, Mr. Radcliffe testified that he did not communicate with his office to ascertain whether or not the injunction had been entered but began opening the bids at precisely 10 o'clock A.M.; that the employee posted at his office to advise him did not communicate the order to him until 10:04 A.M., at which time he had finished opening the fourth bid; that after receipt of this actual notice of the Court's order, he opened the remainder of the bids.

Since the defendants had stated that delay in the commencement of the project might jeopardize a portion of the work that needed to be done prior to flood season, the Court, at the time of entering the temporary injunction from the bench, stated that he would continue the matter from hour to hour and from day to day to give defendants an opportunity to present the matter fully to the Court for determination upon the merits and would dissolve the temporary order and permit the opening of the bids and the awarding of the contract if it should appear that it was improvidently entered.

No request was made by the defendants for further hearing on the merits and when the Court was advised that the temporary injunction had been violated by the opening of the bids a Show Cause Order was issued to Mr. Radcliffe

to appear on December 19, 1972, and hearing on the merits as to whether the injunction should be made permanent was set at the same time.

### Contempt of Court

This Court finds that Robert Radcliffe was in contempt of this Court when he opened the bids on the Mountain Park Dam Project. Reasons offered by Mr. Radcliffe contribute to, rather than justify, the contempt. He testified that he did have knowledge of the hearing and that he was aware that the United States Attorney was representing the Bureau. In spite of this knowledge he made no effort to determine the outcome of the hearing before opening the first bid even though it would have been a simple matter for him to have made a telephone call to his own office.

Disobedience of the Court Order, and the opening of the bids, was said to have been a judgment decision on the part of Mr. Radcliffe. The only response given was that he only acted according to "established procedure". Mr. Radcliffe testified that he would have been under considerable criticism from the contractors whose bids had been opened if he had not revealed all of them.

The "established procedure" that Mr. Radcliffe relied on was that the bids were to be opened at 10 A.M. He stated that a delay in opening of the bids could have jeopardized the contract. It appears to this Court that Mr. Radcliffe and the Bureau of Reclamation made a deliberate attempt to flout the processes of this Court. This scheme is demonstrated first by the reckless disregard of a Court Order by Mr. Radcliffe. A further demonstration comes from testimony of Mr. Donald Duck, the Deputy Director of the Bureau of Reclamation's Denver office.

Mr. Duck testified that the bid opening could not have been delayed for one or two days if this were needed by contractors to adjust bids by the wage modification. He stated that:

"The Bureau of Reclamation, by agreement, opens bids on Tuesday to avoid conflict with other agencies. Therefore, the minimum time, normally, you would postpone would be a week." (Trans. p. 59).

This statement of Mr. Duck is in direct conflict with other parts of his testimony. He states here that the Bureau opens bids on Tuesday; however, the original bid opening date for the Mountain Park Dam Project was November 16, 1972, which was a Thursday.

With this serious conflict in the testimony of the Bureau's Deputy Director, this Court is left to question the complete accuracy of the Bureau's testimony and motives. It lends support to the conclusion of this Court that the Bureau had from the start sought to evade the laws of the United States. It further reinforces this Court's conclusion that the Bureau has made a deliberate attempt to flout the processes of the Court.

Robert Radcliffe was in contempt of this Court when he opened the first bid on December 12, since notice of the restraining order received by his counsel was notice to him as was notice to Mrs. Dean Cox at his office. Furthermore, Mr. Radcliffe could and should have made himself personally aware of the judicial order before any bid was opened. This could have been accomplished by a simple telephone call. It is no excuse that Mr. Radcliffe had not been advised legally on this matter, just as long as he had notice of the *hearing*.

The Bureau of Reclamation cannot hide behind the misdeed of Mr. Radcliffe.

Congress has delegated important powers and responsibilities to the Bureau. Construction of the Mountain Park Dam involved an exercise of this responsibility, and the importance of expediting construction can be noted and assumed. Regardless of its importance, however, the Bureau of Reclamation cannot with impunity place itself above the law. And if, as urged by the Bu-

reau, time in beginning construction of the dam was so vital to the welfare of the project, bids could have immediately been re-solicited containing the admittedly correct wage specifications and new bids obtained and opened within less than two weeks after the issuance of the Temporary Injunction and the aborted opening of bids on December 12, 1972, or at the latest after the trial on the merits and the entry of the Permanent Injunction on December 19, 1972. The fact that this procedure has not been followed prior to the date of this opinion, January 24, 1973, would seem to emphasize the improper attitude of the Bureau in failing to notify the bidders of the November 30, 1972, wage modification which could have been effected without any loss of time and the deliberate commencement of the opening of bids without ascertaining the outcome of the hearing in this Court and the opening of the remainder of the bids in defiance of the known Order of the Court.

It is far more important for a government agency to follow the laws passed by Congress and to show obedience to the judicial process than it would be in the case of a private individual. In the first place, the agency is part of the legal system that can survive only through obedience to the law. Furthermore, what an agency does affects the lives of many people. If an agency is allowed to flout the law, the people affected will soon lose confidence in that agency or perhaps, justifiably, in the total legal system.

Need for obedience to the judicial process has been firmly established by the Supreme Court. In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895). This case involved the contempt conviction of a labor leader who had disobeyed a judicial order. The court stated that:

"A court without the power effectually to protect itself against the assaults of the lawless, or to enforce its orders, judgments, or decrees against the recusant parties before it, would be a

disgrace to the legislation, and a stigma upon the age which invented it." Id. at 595, 15 S.Ct. at 910.

Even assuming that the Bureau was correct in rejecting the wage modification, it had no right to make any judgment decision to ignore an order of this Court. Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). It would be appropriate in light of the Bureau's disobedience to the restraining order for this Court to void the bids covering the Mountain Park Dam Project. To allow the agency to escape the force of the order prohibiting the opening of bids would be to invite this and other agencies to exercise their judgment without resorting to the more acceptable legal procedures.

This Court, however, does not wish to rest its decision to void the bids on the contempt findings only. Because of the seriousness of the issues involved, it will best serve the parties involved if the merits of the case are considered.

### Legal Conclusions

This Court has jurisdiction over this matter under Title 28 U.S.C. § 1361, which gives to district courts original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. The purpose of this jurisdictional section was to give Federal District Courts the power to issue "appropriate corrective orders where Federal officials are not acting within the zone of their permissible discretion." Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561, 565 (1970).

The relief sought in this case is an order to compel an agency of the United States to perform a duty owed to the plaintiff. Thus even if the relief is formed in terms of an injunction, it is still an action in the nature of mandamus. But even if it were not, this Court has the power to issue an injunction and restraining order against an

agency and governmental official. Section 703 of the Federal Administrative Procedure Act authorizes a person to file an applicable form of legal action in a court of competent jurisdiction. (Title 5 U.S.C. § 703.)

The complaint in this case was filed by the International Union of Operating Engineers, Local 627, an unincorporated labor organization. Organizations have long been recognized as having the capacity to sue on behalf of their members. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). This principle was recognized and followed in United Federation of Postal Clerks v. Watson, 133 U.S.App.D.C. 176, 409 F.2d 462 (1969), wherein it was observed that "courts have come increasingly to recognize the standing of associations to raise in some circumstances the rights of their members." The important requisite for this standing is a genuine interest that insures that the case will be adequately prosecuted. In the present case, the plaintiff has the requisite interest and has demonstrated a willingness to vigorously prosecute the claim. Besides acting in a representative capacity, the plaintiff has a personal right in the protection of its internal structure. This plaintiff has standing under § 702 of the Federal Administrative Procedures Act:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." (Title 5 U.S.C. § 702).

Through a series of cases, the Supreme Court has greatly expanded the class of persons entitled to seek judicial review of agency action. Association of Data Processing Service Organization, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). "Judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated." Barlow v. Collins, *supra*, at 166, 90 S.Ct. at 838. The question of standing is "whether the interest sought to be protected . . . is arguably within the zone of interests to be protected . . . by the statute . . . in question." *Data Processing, supra,* 397 U.S., at 153, 90 S.Ct., at 830.

The relevant statute in the present case is the Davis-Bacon Act, which guarantees that mechanics and laborers employed on public works projects are paid a wage not less than the prevailing wage in the area. It is beyond any question that the plaintiff is within the zone of interests to be protected by the Davis-Bacon Act and is therefore entitled to seek judicial review of the action of the Bureau of Reclamation.

The wage modification prepared by the Department of Labor and rejected by the Bureau involved one class of workers—the operating engineers. This is the classification of work performed by the members of the plaintiff Union. In fact, the modification of wages involved in this case was adopted by the Department of Labor as a result of a request made by the plaintiff labor organization.

Labor organizations are in fact explicitly recognized by the Secretary of Labor to be interested persons under the Davis-Bacon Act. In the rules and regulations promulgated by the Secretary of Labor, an "interested person"

"[I]s considered to include, without limitation: (1) any contractor, or an association representing a contractor, who is likely to seek or to work under a contract containing a particular wage determination, or any laborer or mechanic, or *any labor organization which represents a laborer or mechanic, who is likely to be employed or to seek employment under a contract containing a particular wage determina-*

*tion . . .*" (Emphasis added), Title 29, Code of Federal Regulations, § 7.2(b) (Revised as of January 1, 1970).

Besides this explicit administrative declaration, the Secretary of Labor has consistently recognized labor organizations as "interested parties". In his earlier rules and regulations, the Referee appointed to make wage determinations was directed to recognize organized labor. Consider the following rules and regulations:

In the Section titled *"Survey of Projects"* it was provided that: "it shall be the duty of the Referee with respect to the crafts within the scope of his assignment, to secure (a) copies of written collective wage agreements between contractors and labor organizations (if any) in effect within the preceding year in the locality of the project." Title 29 C.F.R. § 1.6(a) (1935).

In the Section titled *"Union Standards"*, it was provided that: "the Referee shall also ascertain the local union rate and shall supplement it by (a) information citing the date of its adoption, the local in which it is in effect, and the method by which it was fixed; and (b) evidence of the proportion of the union and non-union workers in the particular craft employed in the locality." Title 29 C.F. R. § 1.9 (1935).

In the Section titled *"Sources of Information"*, it was provided that: "in making his investigation the Referee shall consult the following sources of information: (a) the buildings trade council (or some other local federation or council of the various craft unions); (b) independent labor organizations not allied with the local building trades council; . . ." Title 29 C.F.R. § 1.10 (1935).

Although these rules have been completely revised, the latest time being January 1, 1970, the Secretary of Labor has continued consistently to recognize organized labor as an "interested person". It may be that where the Davis-Bacon Act is involved, labor organizations will be the most likely party seeking review of agency action. And as the Supreme Court noted in Barlow v. Collins, *supra,* 397 U.S. at 167, 90 S.Ct., at 838, "unless members of the protected class may have judicial review the statutory objectives might not be realized." Labor organizations might well be the only ones sufficiently interested to contest the action of agencies that violate the prevailing wage provisions of the Davis-Bacon Act. See, Office of Communication of the United Church of Christ v. F.C.C., 123 U.S.App.D.C. 328, 359 F.2d 994, 1001 (1966).

### Review of Agency Action

The Bureau rejected the wage modification involved in this case by its interpretation of the Rule promulgated by the Secretary of Labor which provides in pertinent part that:

"[M]odifications received by the Federal agency . . . later than 10 days before the opening of bids shall not be effective except when the Federal agency finds that there is a reasonable time in which to notify bidders of the modification."

If the wage modification had been received by the agency ten days before December 12, there would be no reason at all to reject the modification. There are facts in the record that would indicate that the Bureau did receive knowledge of the modification. But even if knowledge by telephone message is not actual receipt, the Bureau was still, under the circumstances of this case, obligated to accept the wage modification.

 Federal agencies under the above-cited rule are not free to arbitrarily reject a wage modification received less than ten days before the opening of bids. The rule says that the wage modification will "not be effective except when the agency *finds* that there is a reasonable time in which to notify bid-

ders of the modification." (Emphasis added.) By this rule, a Federal agency has a positive duty to make findings as to the adequacy of the time in which to notify bidders. In this case so far as the record shows the agency acted arbitrarily and failed to consider the interest to be protected under the statute involved and the merits.

Reviewing courts would face an impossible task if agencies reached decisions without making and recording clear findings. "Only adequate findings will reveal whether a decision was on the merits, what issues were actually decided, and what policies were involved." Note, Administrative Findings Under Section 8(b), 51 Va.L.Rev. 459, 463 (1965).

"The most obvious reason for requiring findings is that government should not operate in secret. The acts of the sovereign should be done in the open, subject to comment and criticism." *Id.* at 462.

More important, the acts of an agency must be done in the open to be subject to any effective judicial review. S.E.C. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Professor Davis observes that:

"The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement." K. Davis, Adm'n Law Treatise, Sec. 16.05 (1958).

In the present case, the Bureau expressed the opinion that it had the absolute discretion to accept or reject a wage modification received less than ten days from the opening of bids. If this had been the intent of the Rule, it could have been more precisely stated by the Secretary of Labor. This Court does not believe that the Rule gives this much unbridled discretion to Federal agencies involved in public works. The Rule not only specifies the requirement that an agency make findings, it also directs the agency in making the findings. What the agency is required to find is whether the wage modification was received in time to notify bidders.

An additional requirement was added to the rule by the Bureau. According to its interpretation, the Bureau must find if there is time to notify the bidders and whether the bidders would have ample time in which to modify their bids. This second requirement is not part of the rule. There is no evidence to show that the Secretary of Labor intended to preclude an extension of time for bid openings if the bidders could be notified of such action. But accepting the Bureau's interpretation as accurate, the Bureau was still arbitrary and capricious in rejecting the wage modification.

If the Bureau received the wage modification as late as December 4, it still had eight days before the scheduled opening of bids. The Bureau testified that it could have prepared and mailed a supplemental notice within 24 hours, and one of the contractors testified that a prepared bid could have been adjusted in a period of one day. There was thus enough time in which to notify the bidders and enough time for bid adjustments without extending the bid opening date.

Much weight should be given to agency interpretation of statutes and rules. N.L.R.B. v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941). This does not mean, however, that an agency is free to ignore the basic purpose of the statute involved. Neither does it mean that a reviewing court is powerless to set aside agency action that has no rational or reasonable basis in law.

The Federal Administrative Procedure Act (Title 5 U.S.C. § 706) requires a reviewing court to compel action unlawfully withheld; and to set aside agency action that is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law. Considering carefully all of the facts in this case, the only conclusion this Court can reach is that the Bureau was arbitrary and abused its discretion when it rejected the wage modification.

In finding the action of the Bureau to be arbitrary and capricious, this Court cannot ignore the callous attitude of the Bureau that has been demonstrated in these proceedings, particularly the flagrant disobedience to a lawful order issued by this Court. There has been a clear attempt on the part of the Bureau to evade the laws of the United States. Failure to accept and to send out the wage modification was arbitrary and capricious and a deliberate violation of the letter and spirit of the law.

■ Inconvenience to the Bureau by the decision to declare void the bids on the Mountain Park Dam Project is a direct result of the careless, arbitrary and contemptuous action of the Bureau itself. Had the bids remained sealed as ordered by this Court, they could have been returned to the contractors for the necessary adjustment. Regardless of the inconvenience, the only effective remedy, under the circumstances, is to void the bids.

### Conclusion

For the reasons set forth herein the plaintiff is entitled to judgment declaring the bids covering construction of the Mountain Park Dam opened by Robert Radcliffe in violation of the order of this Court to be void; finding the defendant Robert Radcliffe in contempt of Court; permanently enjoining defendants from awarding a contract on the Mountain Park Dam Project on the basis of the bids opened on December 12, 1972; and ordering the defendants to include in specifications to bidders on said Dam Project the wage determination with all wage modifications thereto as determined pursuant to the Davis-Bacon Act.