OPERATING ENGINEERS LOCAL UNION NO. 3 OF the INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Plaintiff,

v.

William D. HURLEY, Director of the Utah Department of Transportation; C. V. Anderson, Responsible Contracting Officer and Assistant Administrator of the Utah Department of Transportation; Sheldon W. McConkie, Engineer for Preconstruction of the Utah Department of Transportation; Andrew Lewis, United States Secretary of Transportation; George W. Bohn, Responsible Contracting Officer and Division Administrator of the United States Department of Transportation, Federal Highway Administration; United States Department of Transportation, Federal Highway Administration, Defendants.

Civ. No. C 82–0707J.

United States District Court, D. Utah, C. D.

Aug. 26, 1982.

James S. Lowrie, Salt Lake City, Utah, John J. Davis, San Francisco, Cal., for plaintiff.

Lawrence Leigh, Asst. U. S. Atty., Leland D. Ford, Asst. Atty. Gen., Salt Lake City, Utah, for defendants.

## MEMORANDUM OPINION and ORDER

JENKINS, District Judge.

In this action, the plaintiff union seeks injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure that would compel the defendant officials of the Utah Department of Transportation (UDOT), the Federal Highway Administration (FHA), and the United States Department of Transportation (USDOT) to modify the contract specifications for the I–215 East freeway project[1] to conform to the current General Prevailing Wage Determination for power equipment operators in Utah. The United States Department of Labor modified that prevailing wage level in a determination published in the August 6, 1982 issue of the *Federal Register*. See 47 Fed. Reg. 34292.

The bids for the project contracts, which had been solicited early in July, were opened on August 3, 1982. Asserting that the defendants were made aware of the forthcoming modification through the efforts of counsel for the union as soon as July 30, plaintiff argues that the defendants should have notified the bidders of the change, permitting them to amend their bids before the designated opening time of August 3 at 2:00 P.M., or some later time to be designated by the UDOT. Relying upon

---

1. The planned construction technically involves three projects: Nos. I–215–9(57)10, F–018(24) and IR–15–7(151)296.

a reading of the applicable federal regulations, the UDOT declined to contact the bidders or change the scheduled opening of bids.

■ The Davis-Bacon Act, 40 U.S.C. § 276a (1976), mandates that federal contracts such as these shall contain a provision setting the minimum wage for various classes of laborers and mechanics based upon a determination by the Secretary of Labor of the wages for similar work that are prevailing in the surrounding geographical area. These "prevailing wage determinations" are of two kinds: at a contracting agency's request, the Secretary of Labor may issue a *project* determination which applies to work under a particular contract and which is promulgated by direct communication to the contracting agency. Where it appears that a significant number of government contracts will be performed in a specific geographical area, the Secretary may make a *general* wage determination applicable to projects in that area which is promulgated through publication in the *Federal Register.* 29 C.F.R. §§ 1.5–1.7(a) (1981); *North Georgia Bldg. & Const. Trades v. Goldschmidt,* 621 F.2d 697, 703 (5th Cir. 1980). In this case, we are dealing with a general prevailing wage determination, and a modification thereof. Unlike project determinations, which are of short duration, general determinations remain in force and are updated and kept current through published modifications. 29 C.F.R. § 1.7(a) (1981). Modifications which are issued before a contract is awarded generally apply to that contract,

> but modifications published in the *Federal Register* later than 10 days before the opening of bids shall not be effective except when the Federal agency (in the case of Federal-Aid Highway Acts as codified in 23 U.S.C. 113, the State highway department of each State) finds that there is a reasonable time in which to notify bidders of the modification.

29 C.F.R. § 1.7(b)(2) (1981). The modification at issue in this case was published *after* the opening of bids—a time plainly less than 10 days before opening. The plaintiff union downplays the significance of the actual publication, emphasizing that the defendant officials knew on the 30th of July— the Friday before the Tuesday afternoon bid-opening—that the modification would most likely be made, and that the union had provided them with the updated wage schedules. Counsel urges that the defendants had "actual" notice of the modification, rendering its publication in the *Federal Register* merely "constructive" notice, a relatively immaterial event. Plaintiff argues that upon being informed that the modification was forthcoming, the UDOT should have formally determined whether there was reasonable time to notify bidders pursuant to 29 C.F.R. § 1.7(b)(2). Such a formal determination was requested. Informally, UDOT officials expressed serious concern about the time factor and about the effectiveness of the modification prior to its publication. Formally, however, no determination was made.

The union now contends that UDOT's purported inaction on the question of notice to bidders was a violation of its duties under § 1.7(b)(2), leaving this Court free to make its own determination of timeliness. Should this Court find that notice would have been timely, plaintiff urges the retroactive modification of the contract via injunction.

■ Even setting aside any evidentiary controversy as to whether the wage figures provided to officials on July 30th were different from those published on August 6th, the union's argument strays too far. While it is often true that actual notice of a federal regulation currently in force will suffice to bind a party in the absence of *Federal Register* publication, the question here seems not whether the defendants knew of the modification prior to its publication, but whether the modification came into jural existence, whether it had legal force, prior to August 6.

By its own terms, it did not.

The memorandum notice accompanying the modifications in the August 6th *Federal Register* expressly notes that general wage determinations, modifications and superse-

deas decisions "are effective from their date of publication in the *Federal Register* without limitation as to time . . . ." 47 Fed. Reg. 34292 (Aug. 6, 1982). The governing regulation, 29 C.F.R. § 1.7(b)(2) (1981), speaks of publication in the *Federal Register* as the operative event for applying the 10-day rule on notice to bidders.[2] If the Labor Department had intended the result urged herein by the union, it seems logical that it would have repeated in § 1.7(b)(2) the language of § 1.7(b)(1), which speaks of "modifications received by the Federal agency" rather than "modifications published in the *Federal Register*" later than 10 days before the opening of bids.

Counsel would construe away any such distinction in the name of serving the broader purposes of the Davis-Bacon Act.[3] Yet the distinction makes good *administrative* sense. When the Secretary of Labor makes a prevailing wage determination that is general to a designated geographic area, a determination that is not limited as to effective duration, publication in the *Federal Register* fixes a standard reference point in dealing with that action.[4] Administrators who must apply prevailing wage rates in contracting can monitor the daily issues of the *Federal Register* to keep track of modifications as they are published.

The plaintiff would expand an administrator's duty under § 1.7(b)(2), compelling him to keep one ear pressed to the walls of the Department of Labor's Wages and Hours Division, straining to hear of prevailing wage modifications—modifications as yet unborn, but which might issue within days or hours of an opening of bids. No such burden is imposed by § 1.7(b)(2) as presently written, and none shall be manufactured by this Court.

The union attempts to shore up its argument with repeated citations to *International Union of Operating Engineers, Local 627 v. Arthurs*, 355 F.Supp. 7 (W.D.Okl. 1973) *affirmed* 480 F.2d 603 (10th Cir. 1973), in which the court held that the Bureau of Reclamation erred in not determining whether it could timely notify bidders of a prevailing wage modification when the agency was informed of the modification at least eight days prior to the opening of bids. *Arthurs*, however, involved the effectiveness of a modification of a *project* wage determination under 29 C.F.R. § 1.7(b)(1), which speaks of modifications "received by the Federal agency." It made sense in *Arthurs* to proceed upon information received directly from the Department of Labor since that is the route that is provided for. A contracting agency may be expected to be attentive to actions which are informally communicated because where a *project* determination is made, the contracting agency will have requested that determination in the first place. Had UDOT sought a project determination for the I–215 East freeway projects, *Arthurs* might have required the agency to act upon the information it would have received on July 30th. However, a general determination—not a project determination—was involved, and the UDOT was entitled to rely upon the existing determination, which remained in force until modified by publication on August 6th.

This in no way conflicts with *Operating Engineers Local Union No. 3 v. Bohn*, 541 F.Supp. 486 (D.Utah 1982), which involved a modification of a general determination which was published on December 9 and made retroactive to December 5, where bids were to be opened on December 16. The Davis-Bacon Act issue in *Bohn* was ren-

---

**2.** Counsel emphatically contends that the operative event is an "action modifying a general wage determination" and that the "action" to be concerned with is the stroke of the administrator's pen on the 30th of July. 29 C.F.R. § 1.7(b)(2). The document then signed by the Assistant Administrator of the Labor Department's Wages and Hours Division plainly betrays this reading.

**3.** See *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981).

**4.** In the August 6, 1982 notice, for example, the general prevailing wage determinations therein modified are identified both by a file number and the date of publication in the *Federal Register*. 47 Fed.Reg. 34292.

dered moot by an agreed settlement between the parties.

An essential prerequisite to preliminary injunctive relief is a showing by the party seeking relief of a probable likelihood of success on the merits. See *e.g.*, *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dep't of Public Welfare*, 602 F.2d 150, 152 (8th Cir. 1979); *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977), *cert. denied* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759; *Division 580, Amalgamated Transit Union, AFL–CIO v. Central New York Regional Transp. Authority*, 556 F.2d 659, 662 (2d Cir. 1977). Plaintiff largely has failed in that regard. Consequently, the motion for preliminary injunctive relief shall be and hereby is DENIED.