**NORTH GEORGIA BUILDING & CON-STRUCTION TRADES COUNCIL,**
Plaintiff,

v.

**U. S. DEPARTMENT OF TRANSPOR-TATION et al., Defendants.**

Civ. A. No. C75–955A.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 16, 1975.

Harris Jacobs, James T. Langford, Jacobs, Jacobs & Davis, Atlanta, Ga., Robert L. Mitchell, Mitchell, Yancey & Fink, Atlanta, Ga., Sherman, Dunn, Cohen, Thomas K. Dunn, Washington, D. C., for plaintiff.

William Mallard, Asst. U. S. Atty., Joseph A. Blundon, Asst. Chief Counsel, Urban Mass Transp. Admin., Washington, D. C., John R. Strother, Jr., Strother & Weiner, Atlanta, Ga., for Blount Constr. Co., Inc.

W. Stell Huie, G. Donald Johnson, Huie, Brown & Ide, Atlanta, Ga., for Metropolitan Atlanta Rapid Transit Authority & MARTA defendants.

Beverley R. Worrell, Regional Solicitor, W. T. Truett, Atty., U. S. Dept. of Labor, Atlanta, Ga., for Sec. of Labor & Dept. of Labor.

## ORDER

EDENFIELD, Chief Judge.

In this action the court is presented with a dispute the resolution of which hinges on a determination of the proper procedures to be followed by federal agencies and contractors in complying with the Davis-Bacon Act, 40 U.S.C. § 276a et seq., and the regulations promulgated to implement that statute. In order to dispose of the case it is necessary to explore at some length both the factual backdrop of this dispute and the legal framework within which it arose.

The plaintiff is ·an association of trade unions. There are three groups of defendants. The first is comprised of the United States Department of Transportation, the Urban Mass Transportation Administration (which is part of the Department of Transportation), and Carl B. Richardson, the local Chief Engineer of the Urban Mass Transportation Administration. The interests of all of these defendants are identical and for convenience they will hereafter be collectively referred to as the Department of Transportation or DOT. The second is Blount Construction Company, a local contractor. The third group of defendants includes the Metropolitan Atlanta Rapid Transit Authority, its general manager, and ten of its board members. All of these defendants will be collectively referred to as MARTA. Finally, the United States Department of Labor has been joined as a party and will be referred to as the Department of Labor or DOL.

On April 11, 1975, defendant MARTA began soliciting bids for a construction project denominated as "Contract No. GNO-1, Contract Proposal No. 218 Brown's Mill Road Bus Facilities Site Work." It was specified in the bid proposal that the applicable minimum wage scale would be that established as "Highway Construction Rates"[1] in the Atlanta area. The plaintiff, upon being apprised of this bid proposal, protested to the defendants that the proper rate scale was the higher "Building Construction Wage Rates". The defendants made little or no response to these complaints. On April 14, 1975, however, these complaints were supplemented by the arrival of a telegram from an official of the Department of Labor stating his agreement with the plaintiff's position. On May 15, 1975, MARTA, still without responding to the complaints, proceeded to open the bids. Defendant Blount Construction Company was the apparent low bidder. On May 22, 1975 the plaintiff filed this action and on June 2, 1975, it came on for a preliminary hearing. At that hearing the assistant United States attorney aligned the executive branch with the defendants. The court verbally ordered the Department of Labor joined

1. There are three different Davis-Bacon wage scales established for the Atlanta area. Of these, the highway construction rates are the lowest.

as a party and it was thenceforth represented by one of its staff attorneys rather than by a representative of the Justice Department. At the conclusion of the hearing all parties were afforded an opportunity to submit briefs. During the next week two briefs signed by assistant United States attorneys were filed. These briefs came to diametrically opposite conclusions, one presenting the position of the Department of Transportation and the other that of the Department of Labor. Finally, by letter dated June 10, 1975, the court was informed that this intra-executive branch squabble had been resolved and the entire executive branch should now be regarded as supporting the plaintiff's position. The letter also requested permission to withdraw the brief filed on behalf of DOT. This development both clarifies and muddies the waters of this case. On the one hand it brings the federal defendants into a harmonious posture, albeit on the side of the plaintiff. On the other hand it casts some doubt on the wisdom of the remaining defendants' tactical decision to heavily rely on DOT having positioned itself as their ally.

The legal framework is equally complex. The Davis-Bacon Act requires that:

"(a) The advertised specifications for every contract in excess of $2,000, to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works of the United States or the District of Columbia within the geographical limits of the States of the Union, or the District of Columbia, and which requires or involves the employement of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State, in which the work is to be performed, or in the District of Columbia if the work is to be performed there . . . ." 40 U.S.C. § 276a(a).

The Davis-Bacon Act is applicable to contracts entered into pursuant to the Urban Mass Transportation Act of 1964, 49 U.S.C. § 1609. All of the parties agree that under § 1609 the Davis-Bacon Act applies to the MARTA contract involved in this litigation.

■ The Secretary of Labor is empowered to promulgate regulations to implement the Act. 40 U.S.C. § 276c. The regulations promulgated pursuant to this authority provide two alternate methods by which the required wage scale determinations can be made. First, a specific project can be submitted for wage determination. 29 C.F.R. § 1.5 (1974). Alternately, in a geographical area in which wage scales are well settled and numerous federal contracts are awarded annually, the Secretary has granted himself discretion to publish general wage rate determinations for an area. 29 C.F.R. § 1.5(b). The latter method is in force in the Atlanta area. Once general wage determinations for an area have been published the contracting agency makes the initial determination of the appropriate wage scale for a specific project. This determination involves two steps, first deciding which wage scale applies to the project in question and second transposing that rate scale from the Federal Register to the bid proposal. Obviously, the first of these steps is the most likely to be controversial and it is what has given rise to the present controversy. The regulations, however, also require that:

"All questions arising in any agency relating to the application and interpretation of the rules contained in this

part and in Parts 1 and 3 of this sub-title, and of the labor standards provisions of any of the statutes listed in § 5.1 shall be referred to the Secretary for approriate ruling or interpretation." 29 C.F.R. § 5.12.

The provision allowing use of general wage determinations is contained in Part 1 of that subtitle and the Urban Mass Transportation Act of 1964 is listed in § 5.1. It is clear that this regulation was intended to apply to the situation presented by this controversy.[2]

Once a question is submitted to the Secretary of Labor the regulations provide for several procedural steps within the Department. Once the Department has issued a final decision, any interested party can appeal to the Wage Appeals Board, 29 C.F.R. § 1.16 (1974).

Although the regulations do not provide for any further appeal one final forum is apparently available. Once the contract is let the decision to disburse funds under it in certain situations is vested in the Comptroller General, 40 U.S.C. § 276a–2, and that office apparently contends it has the power to independently evaluate and decline to follow decisions rendered on Davis-Bacon Act questions by the Labor Department and Wage Appeals Board. *See* the Comptroller General's Opinions filed as exhibits to MARTA's brief.

The existence of this final forum has given rise to one other legal dispute. Through Reorganization Plan No. 14 of 1950, 1950 United States Code Congressional Service, pp. 1435–36, President Truman sought to insure effective enforcement of several acts, including the Davis-Bacon Act, by centralizing enforcement powers in the Department of Labor. He, however, rather mysteriously also provided that "actual performance of enforcement activities, normally including the investigation of complaints of violations, will remain the duty of the respective agencies awarding the contracts or providing the Federal assistance."[3] A dispute has arisen

---

2. MARTA contends that this regulation is not binding. The court is not convinced. The code section which makes the Davis-Bacon Act applicable to the Urban Mass Transportation Act of 1964 specifically provides that "The Secretary of Labor shall have, with respect to the labor standards specified in subsection (a) of this section, the authority and functions set forth in Reorganization Plan Numbered 14 of 1950 (15 F.R. 3176, 64 Stat. 1267), and section 276c of Title 40." 49 U.S.C.A. § 1609(b). Section 276c is the section which empowers the Secretary of Labor to promulgate regulations which provide for enforcement of the Davis-Bacon Act and are controlling on contractors. Reorganization Plan No. 14 of 1950 grants the Secretary of Labor similar authority to regulate enforcement of the Davis-Bacon Act vis-a-vis other federal government agencies. The Attorney General has given a broad sweep to this intra-executive regulatory authority. 41 Opinions of the Attorney General, 488 (1960). The Secretary of Labor, therefore, has authority to promulgate regulations pertaining to enforcement of the Davis-Bacon Act which are binding on all of the defendants. 29 C.F.R. § 5.12 is just such a regulation and is binding on the defendants in this litigation.

3. A more complete excerpt from the message to Congress follows:

"I transmit herewith Reorganization Plan No. 14 of 1950, prepared in accordance with the provisions of the Reorganization Act of 1949. For the purpose of coordinating the administration of labor standards under various statutes relating to Federal construction and public works or to construction with federally financed assistance or guaranties, the reorganization plan authorizes the Secretary of Labor to prescribe appropriate standards, regulations, and procedures with respect to these matters and to make such investigations concerning compliance with, and enforcement of, labor standards as he deems desirable. The purpose is to assure consistent and effective enforcement of such standards.

"The plan is in general accord with the recommendations of the Commission on Organization of the Executive Branch of the Government. It constitutes a further step in rebuilding and strengthening the Department of Labor to make it the central agency of the Government for dealing with labor problems. * * *

"With the exception of the Department of Labor, the Federal agencies involved in the administration of the various acts are divided into two classes: (1) agencies which contract for Federal public works or construction; and (2) agencies which lend or grant Federal

over this reservation of power to the contracting agency. DOL, joined by the plaintiff, contends that this applies only to the minutiae of enforcement after a contract has been let (for example, the proper job classification of a particular worker) but not as to any broader question such as that presented here: a dispute which would affect the wages payable on every job involved in a contract and which arose before the contract had been executed. MARTA reads the reservation more broadly and claims the Comptroller General as an ally. A reading of the Comptroller General's Opinions cited by MARTA, however, leaves some doubt whether this alliance exists. It is clear that the Comptroller General takes a more restrictive view of Labor's proper role than does Labor itself. The Comptroller General's Opinions do not, however, support the position that when the controversy as to the applicable wage rate schedule arises before the contract is executed and involves the entire contract the contracting agency is free to completely disregard the review and appeal mechanisms established by the Secretary of Labor precisely to resolve such controversies.[3A]

The Comptroller General's decisions cited by MARTA are distinguishable from the instant case on two grounds. First, most of these decisions are rulings on whether or not a project or a portion of a project are subject to the Davis-Bacon Act at all. *See* Exhibits A, D, E, and F. Authority to interpret and enforce an act is obviously not authority to expand the substantive coverage of the act. Any attempt by the Secretary to expand coverage of the Act would be invalid. The contract involved in this litigation, however, is conceded to be covered by the Act, *see* MARTA's Original Brief at 2. Comptroller General decisions on the scope of the Act are not authority for finding a limitation of the Secretary of Labor's enforcement powers over a contract that is covered by the Act. Second, those Comptroller General decisions which do discuss contracts covered by the Act pertain to either extremely specific disputes arising from regular enforcement inspections, *see* Exhibit B and attachment to Exhibit G, or disputes which arose well after the contract was awarded and after there had been substantial performance. *See* Exhibits B, C, and attachment to Exhibit G. None of the cited decisions involve a dispute such as the one presented here which arose before a contract was awarded and affected all wages to be paid under that contract.[4]

Within the legal and factual background explored above the first is-

---

funds, or act as guarantors of mortgages, to aid in the construction of projects to be built by State or local public agencies or private individuals and groups. The methods of enforcing labor standards necessarily differ between these two groups of agencies.

"The methods adopted by the various agencies for the enforcement of labor standards vary widely in character and effectiveness. As a result, uniformity of enforcement is lacking and the degree of protection afforded workers varies from agency to agency.

"In order to correct this situation, this plan authorizes the Secretary of Labor to coordinate the administration of legislation relating to wages and hours on federally financed or assisted projects by prescribing standards, regulations, and procedures to govern the enforcement activities of the various Federal agencies and by making such investigations as he deems desirable to assure con-

sistent enforcement. The actual performance of enforcement activities, normally including the investigation of complaints of violations, will remain the duty of the respective agencies awarding the contracts or providing the Federal assistance."

3A. If the contracting agency were free to disregard the submission and appeal process as MARTA contends, the contracting agency would thereby be able to totally subvert the purpose of the Davis-Bacon Act simply by always electing to adopt the lowest possible wage rate.

4. Such a limitation on the jurisdiction of the Comptroller General is understandable. He is the guardian of the pursestrings of the government and normally his office would not become involved until the contract was executed, performance begun, and a demand made for payment of some item of expense.

sue to be resolved is the proper role of this court in this controversy. This court has jurisdiction over this controversy under Section 1361 of Title 28, United States Code, insofar as the plaintiffs seek to compel a federal officer to perform his duty. The plaintiff has standing to bring this suit under Section 702, Title 5, United States Code; *International Union of Operating Engineers v. Arthurs*, 355 F.Supp. 7, 14 (W.D.Okla.), aff'd 480 F.2d 603 (10th Cir. 1973). In *Arthurs* the plaintiff was a single union whose members were affected by the complained-of agency action, in this case the plaintiff is an association of unions in the same position. The distinction is of no significance on the issue of standing.

■■ The court's role in this controversy, however, is not to decide the entire controversy but rather is limited to entering an order which will "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) abitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] . . . (D) without observance of procedure required by law." 5 U.S.C. § 706. The role of this court does not include a determination de novo of the appropriate wage scale to be applied to this contract.[5] That determination is committed to the agency proceedings provided by the statutes and regulations and this court will therefore express no opinion whatsoever on that aspect of this controversy. What this court can undertake to do is to compel agency compliance with lawful procedures.

■ The court concludes that until receipt of the first complaint from the plaintiff, the defendants were proceeding in a completely lawful and appropriate manner. However, once that complaint was received a question had arisen as to the application and interpretation of the general wage scales for the Atlanta area and that question was required to be referred to the Secretary of Labor for an appropriate ruling or interpretation. 29 C.F.R. § 5.12 (1974). This court has authority to order that that submission be made under subsections (1) and (2)(D) of Section 706 of Title 5, United States Code. The defendants are, accordingly, ordered to submit the issue of which wage scale should be utilized in this contract to the Secretary of Labor for a ruling. Any adverse ruling can of course be appealed to the Wage Appeals Board and eventually may form the basis for a renewed court challenge under the Administrative Procedure Act. The court, however, at this time will rule only on what agency procedures must be employed.

■ The plaintiff has also requested that this court enjoin execution of the contract on the basis of the bids opened on May 5, 1975 and require that it be readvertised. The court declines to go so far. The plaintiff was found to have standing in order to protect the rights conferred by the Davis-Bacon Act on laborers in general and plaintiff's members in particular. Its only interest is to insure that the appropriate wages under the Act are paid to all laborers hired under the contract. Accordingly, the court enjoins the defendants from executing any contract for the Brown's Mill project until such time as a final ruling has been made on the appropriate applicable wage scale to be included therein *unless* such contract contains a clause providing that the wage scales

---

5. Wage rate determinations made by the Secretary of Labor pursuant to the Davis-Bacon Act are not subject to judicial review. *Binghamton Construction Co. v. United States*, 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954). The only role of the court in this case is to exercise the authority granted by the Administrative Procedure Act to review compliance with agency procedures and hear challenges to those procedures under the due process clause. *Framlau Corp. v. Dembling*, 360 F.Supp. 806, 809 (E.D.Pa. 1973) ; *Arthurs, supra*.

in it are subject to adjustment on order of the Secretary of Labor or of the Wage Appeals Board.

That injunction having been entered, there remains the question what action should be taken on the Brown's Mill project. Three possibilities suggest themselves. (1) All action on the project can be deferred until there is a final ruling on the appropriate wage scale. (2) The contract can be executed as bid with a clause providing for a later retroactive adjustment of the wage scale if necessary.[6] (3) The contract can be withdrawn and resolicited with such an adjustment provision. Which of these possibilities is legally appropriate has not yet been adequately briefed by the parties and the court is not entirely convinced it is even appropriately before this court. Hence the court expresses no opinion on this issue at this time and will leave its determination to the defendants.

---

6. Defendant MARTA has suggested that this is possible under the contract as bid.