The ASSOCIATED BUILDERS AND CONTRACTORS OF TEXAS GULF COAST, INC., and Gulf States, Inc., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF ENERGY and its secretary, James R. Schlesinger, Defendants.

Civ. A. No. G–78–61.

United States District Court, S. D. Texas, Galveston Division.

May 17, 1978.

Charles W. Stuber, Dallas, Tex., for plaintiffs.

Jack Shepherd, Asst. U. S. Atty., Houston, Tex., for defendants.

Michael L. Atkinson, Houston, Tex., for intervenor Houston Gulf Coast Building & Const. Trades Council.

## MEMORANDUM OPINION

COWAN, District Judge.

*The Issue*

■ This case, which is currently before the Court after an evidentiary hearing upon plaintiffs' request for a preliminary injunction, presents this issue:

May the Executive Branch of the federal government constitutionally deprive the plaintiffs of their right (established by duly promulgated regulations of the Secretary of Labor) to an administrative appeal from an initial wage determination made by a regional Wage and Hour Compliance Specialist of the Dallas Regional Office of the Department of Labor?

This Court holds that the answer to this question is: No.

*Facts*

The United States Department of Energy (hereinafter "DOE") is constructing in Brazoria County, Texas, a Strategic Petroleum Reserve Project, known as the Bryan Mound Project. Plaintiff Gulf States, Inc. is a substantial electrical contractor, employing approximately 400 persons, and doing business almost exclusively in Brazoria County. Gulf States is a potential bidder on all or portions of the electrical work necessitated by the Bryan Mound Project. The Associated Builders and Contractors of Texas Gulf Coast, Inc., is a trade organization of contractors, subcontractors, and suppliers whose members engage in the construction business within the Texas Gulf Coast area and whose members approximate 250. Many of the members of Associated Builders are potential bidders on the Bryan Mound Project.

The national energy crisis makes it imperative that delay in the Bryan Mound Project be avoided. Severe economic and national security consequences will result if the project is delayed.

Brazoria County is located in an area commonly known as the "Brazosport area." The Brazosport area labor market is to some degree isolated from the Houston area, which is located about 50 miles northeast upon a heavily traveled, two-lane, dangerous, antiquated highway. Craftsmen and laborers in the Houston labor market will commute to Brazosport for work only when there is scant available work in the Houston area. Most of the craftsmen and laborers normally employed in the Brazosport area are permanent residents of that area.

The Bryan Mound Project is so massive that it will inevitably have enormous impact upon the construction labor market of the Brazosport area which contains only approximately 55,000 people, many of whom are employed at Dow's enormous facility in Freeport, Texas, or by satellite companies which are predominantly Dow suppliers.

The Davis-Bacon Act (40 U.S.C. § 276a et seq.) is applicable to the Bryan Mound Project. This statute and the regulations issued by the Secretary of Labor pursuant thereto create a procedure to insure that workers upon federally financed projects receive wages consistent with the wages prevailing for corresponding classes of workers on similar projects in the locality. The statute is essentially a minimum wage statute.

The Secretary of Labor, pursuant to authority granted by the statute and the President's Reorganization Plan No. 14 (15 Fed. Reg. 3176) has prescribed procedures to implement the Davis-Bacon Act. (See 29 C.F.R. Subtitle A)

The regulations in question create a procedure by which the Administrator (an official of the Department of Labor) conducts a continuing program to obtain and compile wage information so that, upon request of a contracting agency (here DOE) he can promptly issue wage determinations, which reflect accurately the wages prevailing for corresponding classes of workers on similar projects in the locality. The regulations further create a procedure by which a party (typically either an employer or a labor organization) who feels aggrieved by an initial determination of a Wage and Hour Specialist may request reconsideration of the decision, and if reconsideration is denied, perfect an administrative appeal to the Wage Appeals Board, also an agency of the Department of Labor. In oral argument, counsel represented that administrative appeals to the Wage Appeals Board have often been successful and have frequently resulted in decisions holding that the initial determination of the Labor Department Wage Specialist was incorrect.

The Wage Appeals Board, under the procedures promulgated by the regulations, is not obligated to grant an appeal, but may exercise its discretion to refuse to review an initial wage determination.

■ This Court holds that in promulgating the rules governing and setting the procedures for making and appealing initial determinations, the Secretary of Labor has created in plaintiffs and other similarly situated, a reasonable and protectable expectation that the rules and procedures prescribed by the regulations will be scrupulously and conscientiously followed.

■ Significantly, the regulations themselves and the evidence before this Court reveal that there is no valid reason why the completion of an appeal to the Wage Appeals Board must be a prolonged procedure. The Wage Appeals Board is an administrative tribunal bound by no rigid rules, definite timetables, or formal rules of evidence or procedure. The eventual determination of the Wage Appeals Board is, for practical purposes, virtually final. The Courts have no jurisdiction to review final decisions of the Wage Appeals Board, and determinations as to the proper wage rate in a locality fall within the peculiar and particular expertise of the Wage Appeals Board.

The Executive Branch of the United States Government here, if properly motivated, could have and can afford the plaintiffs procedural due process promptly. The Court is persuaded that the questions in issue in connection with the proposed administrative appeal could have already been resolved in less time and with less expenditure of effort than the Department of Justice has expended in resisting the plaintiff's reasonable and constitutionally protected demands for procedural due process.

This Court has no authority to review the determination of the Wage Appeals Board once made; however, for purpose of determining whether plaintiffs have a reasonable expectation and probability of prevailing upon the merits before the Wage Appeals Board, this Court must consider and act

upon the evidence presented at the full evidentiary hearing conducted on April 28. The uncontroverted evidence presented to the Court at the hearing of April 28 establishes that the initial determination of the Wage Specialist of the Department of Labor is seriously and manifestly erroneous.

Plaintiff Gulf States, Inc. (hereinafter "Gulf States") is an electrical contractor—primarily concerned with wage rates of electricians who will be laying electrical lines through ditches dug by laborers, and the wage rates of the laborers who dig the ditches. Plaintiffs' extensive experience, and its detailed studies reveal that the prevailing wage rate in the Brazosport area for journeyman electricians is approximately $8.25 per hour including fringe benefits, and $4.50 per hour including fringe benefits for laborers. The revised wage determination from which plaintiff Gulf States seeks to appeal promulgated a rate of $12.00 per hour for journeyman electricians and $8.33 an hour for laborers.

Attached to plaintiffs' sworn complaint is a Labor Department wage determination for Brazoria County, Texas, effective from December 21, 1977 to April 19, 1978 promulgating a heavy construction rate for laborers of $2.75 per hour, and for journeyman electricians of $6.00 per hour. The evidence presented at the hearing of April 28 contains no explanation as to why the Revised Wage Determination of March 22, 1978, from which the plaintiffs seek to perfect an administrative appeal should promulgate a rate of $12.00 per hour (100% increase) for journeyman electricians and $8.33 per hour (over 300% increase) for laborers. While it is true that the wage determination effective from December 21, 1977 to April 19, 1978 was for "heavy construction," and the wage determination from which plaintiffs seek to perfect their administrative appeal is for "building construction," the uncontroverted evidence before the Court reveals that in Brazoria County the building and heavy construction prevailing wage rates are identical. (See Merten affidavit, page 3).

The plaintiffs' inability to perfect an administrative appeal without the intervention of this Court arises from DOE's understandable desire to expedite the Byran Mound Project, from minor delay inherent in the Department of Labor's procedures, and perhaps from mere bureaucratic inertia.

DOE issued invitations to bid in January and February 1978. These initial invitations apparently did not prescribe the applicable wage rates. DOE requested a wage determination on the project from the Labor Department on February 23, 1978 and on March 27, 1978, the DOE incorporated into the Invitation to Bid the Revised Wage Determinations in issue (which had been promulgated on March 22, 1978). Plaintiff Gulf States became aware of this Revised Wage Determination on April 3, 1978, when it received the modified Invitation to Bid. Gulf States immediately sought administrative review of the initial wage determination, which it had a right to do, but was unable to complete its administrative appeal because the first bid opening was scheduled for April 11, 1978 at 2:00 p. m. Although there is no reason why the administrative appellate procedure should be prolonged, plaintiffs obviously were not able to complete an administrative appeal in the seven days available.

On April 11, 1978, this Court entered a Temporary Restraining Order commanding the defendants to refrain from accepting or opening bids on the Bryan Mound Project until April 29, 1978, and setting a hearing on the merits on April 28, 1978 at 1:30 p. m. During the period from April 11 to April 28, plaintiffs have assembled and submitted detailed data including statistics on over 7,300 construction jobs. The Court specifically finds that since learning of the apparently erroneous determination, the plaintiffs have exercised not merely reasonable diligence, but extraordinary diligence to correct an apparent governmental error.

At the time of the hearing on April 28, plaintiffs had been unable to obtain a decision from the administrative officer who must initially rule upon the request for

reconsideration. The record contains no satisfactory explanation for the delay in making the initial ruling upon plaintiff's request for reconsideration. The delay in prosecuting the administrative appeal, is at present, the result of failure of the Department of Labor to rule upon plaintiffs' request for reconsideration of the initial decision. There was no evidence presented at the hearing of April 28, that anyone has requested the Wage Appeals Board to give this case expedited hearing, or to convene immediately so as to afford the plaintiffs procedural due process and at the same time avoid delay in this crucially important project.

■ DOE contends that despite plaintiffs' obvious inability to process their administrative appeal, nevertheless procedural due process has been afforded. DOE predicates this argument upon evidence that plaintiffs were given an opportunity to submit data prior to the initial determination of the Department of Labor and that plaintiffs did not do so. There are several problems with DOE's position in this connection. First, there is no proof that all or even a substantial number of the members of Associated Builders and Contractors of Texas Gulf Coast, Inc. failed to submit data. There is no proof that the apparently erroneous initial decision was effected by the failure of Gulf States to submit data. Most significant, however, is the fact the regulations of the Secretary of Labor giving the plaintiffs the right to perfect an administrative appeal do not make the initial furnishing of data a condition precedent to the right to an administrative appeal. Presumably, the Secretary of Labor could have so required in his regulations, but did not do so. The Court has the power to make the Executive Branch of the government conform to its own rules, but has no authority to rewrite the rules.

Another factor is significant. While plaintiffs' position would be equitably stronger if the two named plaintiffs herein had submitted data at an earlier date, the two named plaintiffs had no legal obligation to submit data and, more important, no

reason to foresee that the determination made would be grossly inconsistent with the wage determination previously issued for the period December 21, 1977 to April 19, 1978 (see Exhibit C of plaintiffs' sworn complaint.)

Plaintiffs, insofar as the evidence reveals at the hearing of April 28, had no reason to foresee that the Wage Specialist in charge of this case would make an apparently egregious error.

Gulf States, and various members of Associated Builders, will suffer irreparable harm if the equitable relief previously granted by this Court is not continued.

Gulf States' predicament is accurately described by its founder and president, Franz June. Mr. June is the founder and chief executive officer of an electrical contracting company employing approximately 400 people. About 80% of his work is done in Brazoria County. Much if not all of his work is done upon competitive bidding, and he is currently in the process of performing contracts which were bid on the assumption that currently existing prevailing wage rates in Brazoria County, with normal adjustment upward for inflation, would remain in effect during the course of the contracts. The performance of a very large construction contract, such as the Bryan Mound Project, in his area will have a catastrophic, disruptive effect upon his business if the job is performed at the alleged inflated wage rates represented by the Labor Department's initial determination from which he seeks to perfect an administrative appeal. If Gulf States is the successful bidder, his business will be thrown into turmoil because many of his employees will be working on older and other jobs at lower wage rates than those employees who will be working on the Bryan Mound Project. He conceives of this as an intolerable and unmanageable situation.

If his company is not the successful bidder upon the electrical work for the Bryan Mound Project, he contemplates that many if not most of his employees will leave his employ to go to work for whatever contractor or contractors are the successful bidders

on the Bryan Mound Project, since the wages being paid on the Bryan Mound Project will be considerably greater than the prevailing wages in the Brazosport area. Mr. Jones suggests that the difficulties created by this situation could be so severe that he would be forced out of business.

According to the well established procedures of the Wage Appeals Board, once DOE has awarded contracts, the Wage Appeals Board will not consider an administrative appeal; thus, for the plaintiffs it is truly now or never.

Plaintiff Gulf States clearly has no adequate remedy at law in the sense of a potential action for damages. If Gulf States is driven out of business or caused severe, crippling economic loss by virtue of an erroneous determination, there is no entity from whom Gulf States can seek damages in a court at law.

The most important aspect of the irreparable harm visited upon plaintiff Gulf States, however, is the fact that Gulf States has a constitutional right to have its government follow its own rules. If Gulf States is denied its right to its administrative appeal, it has, in this Court's view, been deprived of procedural due process which is in itself irreparable injury.

This Court in determining whether to grant injunctive relief, is required to and has balanced the equities. In this Court's view the strongest factor in balancing the equities is that there is no reason why the Executive Branch of the United States Government cannot, if properly motivated, follow the procedures set forth in 29 C.F.R., Subtitle A, and grant the procedural due process required by those regulations.

*Authorities*

The District Court for the Northern District of Georgia in *North Georgia Building & Construction Trades Council v. United States Department of Transportation,* 399 F.Supp. 58 (W.D.Ga.1975) enjoined the Department of Transportation from executing contracts for a project until the Department of Labor, including the Wage Appeals Board, had made a final ruling on the proper wage scales.

In *International Union of Operating Engineers Local 627 v. Arthurs,* 355 F.Supp. 7 (W.D.Okl.1973), the court enjoined the Bureau of Reclamation from awarding contracts upon a project on the basis of bids which did not comply with wage determinations as made pursuant to the Davis-Bacon Act.

■ Procedural due process requires the government to adhere to its own rules. *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). In that case, the failure of the Board of Immigration and the Department of Justice to abide by their own regulations in a deportation proceeding, was held to be a denial of due process of law and resulted in the vacation of the deportation order.

■ This doctrine has been relied upon in instances ranging from Naval Reservists who sought military discharges pursuant to regulations and procedures adopted by the Navy, *Hammond v. Lenfest,* 398 F.2d 705 (2nd Cir. 1968); *Hollingsworth v. Balcom,* 441 F.2d 419 (6th Cir. 1971), to Minnesota farmers who sought reinstatement of an FHA emergency loan program in a declared emergency loan area after the Secretary of Agriculture, acting without statutory authority, unilaterally terminated the program without notice, *Berends v. Butz,* 357 F.Supp. 143 (D.Minn.1973). It matters not which governmental agency or political subdivision has promulgated the procedures or regulations, or whether the regulations so established go beyond what is constitutionally required. The rules and regulations of an administrative agency are binding even when the action under review is discretionary in nature. *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1959).

*Service* involved the discharge of a foreign service officer. The discharge was set aside because the State Department failed to follow its own procedures regarding discharge for suspected disloyalty and untrustworthiness. The Court stated at 388, 77 S.Ct. at 1165:

While it is of course true . . . the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, . . having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them.

In *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) the petitioner was employed by the Department of Interior as an Education and Training Specialist. Petitioner was notified by letter from the Secretary of Interior that he would be suspended from duty because of suspected associations with alleged Communists. The regulations of the Department of Interior did not preclude the power of the Secretary to discharge summarily any employee without cause; but the regulations did prescribe a procedure. The court, following the holding in *Service, supra,* declared that the Secretary was bound by the regulations he himself had promulgated even though without such regulations he would have been able to summarily discharge petitioner.

In *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969), the appellate court reversed a conviction because statements made by the defendant during an interview with IRS agents were improperly admitted into evidence. The defendant had not been notified when he was interviewed by the IRS agents that the function of the Special Agents of the Intelligence Division was to investigate the possibility of criminal tax fraud. Although the Constitution did not require full *Miranda* warnings at that stage of the investigation, IRS regulations clearly directed such warnings to be given before the start of any interview. The court stated:

> An agency of the government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down.

420 F.2d at 811.

█ It is also true that individual government agents cannot escape adherence to governmental regulations. In *Unit-*ed States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) Chief Justice Burger again discussed the absolute nature of the *Accardi* doctrine. The Attorney-General had appointed a Special Prosecutor and issued a regulation vesting the Special Prosecutor with the authority to control the investigation and litigation related to "all offenses arising out of the 1972 Presidential Election . . ." 38 Fed.Reg. 30730, as amended by 38 Fed.Reg. 32805. The Court found that the regulation gave the Special Prosecutor "explicit power to contest the invocation of executive privilege in the process of seeking evidence deemed relevant to the performance of these specially delegated duties." *supra* at 695, 94 S.Ct. at 3101. The court then goes on to say:

> So long as this regulation is extant, it has the force of law. . . . Here as in *Accardi,* it is theoretically possible for the Attorney General to amend or revoke the regulation [re]defining the Special Prosecutor's authority. But he has not done so. So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and enforce it.

418 U.S. at 696, 94 S.Ct. at 3101.

It is immaterial whether the eventual outcome, after following the promulgated procedure, will be any different from that observed after the initial noncompliance. In *Yellin v. United States,* 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963) a witness before the House Un-American Activities Committee was convicted on four counts of contempt of Congress for refusing to answer questions. The defendant has requested an executive session pursuant to Rule IV of the Committee's self-proclaimed rules, but was denied. The court found that the Committee had violated its own rules. The court went on to say:

> Yellin might not prevail, even if the Committee takes note of the risk of injury to his reputation or his request for an executive session. But he is at least entitled to have the Committee follow its [own] rules

and give him consideration according to the standards it has adopted in Rule IV. 374 U.S. at 121, 83 S.Ct. at 1836.

As Justice Frankfurter acknowledged in his dissenting opinion in *Vitarelli v. Seaton, supra* 359 U.S. at 547, 79 S.Ct. at 976, "He that takes the procedural sword shall perish with that sword."

The common thread through all of these cases is that the purpose of the *Accardi* doctrine is to prevent arbitrariness inherently characteristic of an agency's violation of its own regulations. As the Second Circuit stated in *Hammond v. Lenfest, supra,* departures from an agency's procedures "cannot be reconciled with the fundamental principle that ours is a government of laws, not men."

The district judge in *Berends v. Butz, supra* at 152, said

. . . . [t]he unilateral termination of the program without notice to the Minnesota farmers offends all traditional notions of fair play. *The people have a right to expect better treatment from their government.* (emphasis added)

In many instances, including the case at bar, the regulations promulgated by the agencies are for the benefit of the citizen, to allow him to know exactly how the agency operates a particular program, and how to gauge his input into the procedure. In *Mayor and City Council of Baltimore v. Mathews,* 562 F.2d 914 (4th Cir. 1977), actions were brought by the City of Baltimore and the Governor of Maryland against HEW seeking relief against HEW's allegedly arbitrary and illegal methods of enforcing Title VI of the 1964 Civil Rights Act; particularly in the termination of federal funding to the State's colleges and universities, and the elementary and secondary schools of Baltimore. The Court upheld the Department's action regarding the Baltimore lower schools but found its action to terminate financial assistance taken to enforce Title VI vis à vis the State, *ultra vires* and without the force of law. The Court noted that the statute required agency negotiations looking to voluntary compliance as a first step in enforcement, and that the Act also required the funding agency to promulgate regulations to that effect. HEW bound itself by regulation to assist in voluntary compliance and to facilitate negotiations through the issuance of "compliance guidelines." HEW fulfilled its regulations with regard to the Baltimore elementary and secondary schools; it did nothing in regard to the state colleges and universities. At 562 F.2d 922, note 6, the court declares:

> This, in and of itself, contradicts a legal principle to which this circuit has long adhered. Federal agencies will be held to strict compliance with their own regulations and rules of procedure, when a failure to observe them results in prejudice to a party they were designed to protect
> . . .

*Electronic Components Corp. of N. C. v. NLRB,* 546 F.2d 1088 (4th Cir. 1976) involved a petition by an employer to set aside an order of the NLRB finding the company violated the National Labor Relations Act by refusing to bargain with the duly certified bargaining agent of its employees. The employer alleged the union was improperly certified after an election during which there were numerous violations of the Act. The company timely objected to the election and presented evidence to the Regional Director of the NLRB who did not investigate the charges but issued a report that taken on its face, the company did not make out a prima facie case for setting aside the election. The NLRB regulations direct the Regional Director to conduct an investigation of all objections to conduct affecting the result of an election. See 29 C.F.R. § 102.69(c). The regulations did not authorize him to dispense with or to make his report without any investigation at all. The court in remanding the case back to the Regional Director for the required investigation, relied on *Service v. Dulles, supra,* for its discussion of the doctrine, as well as recognizing what the Ninth Circuit had to say on this issue in *NLRB v. Welcome-American Fertilizer Co.,* 443 F.2d 19, 20 (9th Cir. 1971).

. . . failure to follow such guidelines tends to cause unjust discrimination and deny adequate notice contrary to fundamental concepts of fair play and due process . . .

Intervenor Houston Gulf Coast Building & Construction Trades Council argues, on the basis of certain general language in *United States v. Binghamton Construction Co.,* 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1955) that plaintiffs have no standing to sue. A cursory examination of the *Binghamton* case reveals that there is no factual similarity between that case and the case at bar. Justice Warren in *Binghamton Construction Company* said:

. . . The Act itself confers no litigable rights on a bidder for a Government construction contract . . .

Accepting, as this Court must, the complete accuracy of Justice Warren's observation, the rights which the plaintiffs are entitled to here are not established by the Davis-Bacon Act itself, but by the lawful regulations which the Secretary of Labor has promulgated pursuant to that Act. The regulations clearly state:

*Any interested person* may appeal to the Wage Appeals Board for a review of a determination of wage rates made under this part, . . .

29 C.F.R. § 1.16, pg. 22 of 29 U.S.C. Subtitle A.

Section 1.3 of the regulations (see 29 C.F.R. # 1.3, pg. 19) specifically defines a contractor or a contractor's association as "interested parties." The applicable regulations clearly contemplate that a contractor or an association representing a contractor is an "interested person" entitled to perfect an appeal to the Wage Appeals Board from an initial wage determination. See 29 C.F.R. § 7.2, stating:

(a) Any interested person who is seeking a modification or other change in a wage determination under part 1 of this subtitle . . . shall have a right to petition for review of the action taken by that officer.

(b) For the purpose of this section, the term 'interested person' is considered to include, without limitation: (1) any contractor who is likely to seek or to work under a contract containing a particular wage determination.

*Conclusion*

Plaintiffs are entitled to such equitable relief as is appropriate to protect their right to perfect an administrative appeal to the Wage Appeals Board.