384 F.Supp. 1236 (1974)
ANCHORAGE BUILDING TRADES COUNCIL, Plaintiff,
v.
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, an Executive Department of the United States of America, and United States of America, Defendants.
Civ. No. A-184-72.
United States District Court, D. Alaska.
November 21, 1974.
*1237 *1238 William K. Jermain, Birch, Jermain, Horton & Bittner, Anchorage, Alaska, for plaintiff.
A. Lee Petersen, Asst. U. S. Atty., G. Kent Edwards, U. S. Atty. for Alaska, Anchorage, Alaska, for defendants.

MEMORANDUM AND ORDER
VON DER HEYDT, Chief Judge.
This is a suit brought by the Anchorage Building Trades Council, an association of local labor unions in Anchorage, Alaska, to force the Department of Housing and Urban Development (hereafter designated HUD) to produce for inspection by plaintiff various payroll reports furnished by contractors for the use of HUD in compliance with 40 USC 276c. Such reports are made, in part, to insure compliance with 40 USC 276a to 276a-5, popularly known as the Davis-Bacon Act.
The parties have stipulated the material facts. In September of 1971, J. L. Johnston Company, as general contractor, began the construction of a federally subsidized project known as Woodside Village, pursuant to the provisions of 12 USC 1715. Since such was a federally subsidized housing project, J. L. Johnston Company was required to pay the wages set by the Davis-Bacon Act for employees of the Woodside Village housing project. The contractor and subcontractors on the project were required to furnish weekly reports with respect to the wages they paid to the employees who worked on the project, pursuant to 40 USC 276c. They have in fact done so. These reports were delivered to HUD.
In June, July, and August of 1972 complaints alleging violations of 40 USC 276a were asserted by members of the general public and by members of the individual unions constituting the plaintiff in this cause. The complaints consisted of allegations that the wages paid on the project were in violation of the provisions of 40 USC 276a and 12 USC 1715c in that employees upon the project were paid less than required by the standards established by the Secretary of Labor. Plaintiff requested the right to examine the certified payrolls filed by the contractor and subcontractors. On August 16, 1972, that request was denied by the Regional Administrator of HUD. Following that denial, a request for review was made to the Secretary of Housing and Urban Development who denied the request on October 4, 1972. Thereafter, this suit was instituted to compel disclosure of the payrolls under the Freedom of Information Act, 5 USC 552(a)(3).
Additional facts, appearing by way of affidavit and uncontested, show that both the Department of Labor and the Federal Bureau of Investigation have been engaged in an investigation of the Woodside Village project. The Department of Labor has required that the contractor and subcontractor pay back wages to employees who were not paid at the prevailing wage rate.
Additionally, under present consideration is the possibility of presenting the matter to the Grand Jury, based upon 40 *1239 USC 276c and 18 USC 1001. An Assistant United States Attorney has informed the Court by means of affidavit that the wage and hour reports are central to any possible prosecution and that premature disclosure to the public seriously could impair any such prosecutions. The Court has examined, in camera, a representative copy of one such report as the originals are in possession of the Federal Bureau of Investigation.
The single issue presented here is whether the wage and hour reports are exempt from disclosure under 5 USC 552(a)(3) because of one or more of the exceptions enumerated in 5 USC 552(b). The exceptions relevant are (4) "trade secrets and commercial or financial information obtained from a person and privileged or confidential", and (7) "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." These exceptions must be construed narrowly in conformity with the purpose of the Act. See, e. g., Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed. 2d 119 (1973); General Services Administration v. Benson, 415 F.2d 878 (9th Cir.1969). Moreover, the agency resisting disclosure carries the burden to prove that the information involved clearly falls within an exception to disclosure. Environmental Protection Agency v. Mink, supra, 410 U.S. at 93, 93 S.Ct. 827.
Turning first to exception (7), it is apparent that two requirements must be met for that section properly to be applicable. First, the files must have in fact been compiled for law enforcement purposes, and secondly, they must not be available by law to a party other than an agency. The files in the instant case consist of wage and hour reports required to be filed by contractors on federally funded projects in order to insure compliance with the Davis-Bacon Act. 40 USC 276a to 276a-5. 18 USC 1001, which establishes criminal penalties for fraud and false statements, specifically is applicable to the Davis-Bacon Act by 40 USC 276c. Therefore the files are compiled for law enforcement purposes. In fact, the Court is unaware of the legitimate purpose they might serve other than to insure compliance with the Davis-Bacon Act. The files compiled in the instant case appear to parallel those compiled in Ditlow v. Brinegar, 494 F.2d 1073 (D.C.Cir.1974). There it was held that correspondence between the National Highway Traffic Safety Administration and certain automobile manufacturers regarding safety defect investigations was exempt from disclosure under 5 USC 552(b)(7). Further, the House Report stated, in relation to exception 7, "This exemption covers investigatory files related to enforcement of all kinds of laws, labor and securities as well as criminal laws." H. R.Rep. No. 1497, 89th Cong., 2nd Sess. 11, U.S.Code Cong. & Admin.News p. 2428 (1966) (emphasis added).
Although the Court has been unable to find a precise definition of "investigatory" as used in exemption 7, the purpose of the exemption is to protect the Government from premature disclosure of its case. See, 5 Rep. No. 813, 89th Cong., 1st Sess. 3 (1965); H. R.Rep. No. 1497, 89th Cong., 2nd Sess. 11 (1966). Clearly, the files here involved fall within that purpose. See Frankel v. Securities and Exchange Commission, 460 F.2d 813 (2nd Cir. 1972). Therefore, the wage and hour reports involved herein may properly be considered and are found to be "investigatory files compiled for law enforcement purposes."
This Court need not decide whether its function is at an and once a determination has been entered that the files are in fact investigatory files compiled for law enforcement purposes, or whether the Court may then proceed to the question of balancing the need for the information against the harm resulting to the agency from disclosure. See Benson v. General Services Administration, 289 F.Supp. 590 (W.D.Wash.1968), *1240 affirmed, 415 F.2d 878 (9th Cir. 1969); Consumers Union of United States, Inc. v. Veterans Administration, 301 F.Supp. 796 (S.D.N.Y.1969); contra, Ditlow v. Brinegar, supra; Weisberg v. United States Department of Justice, 489 F.2d 1195 (D.C.Cir.1973) (rehearing En Banc); cf. Environmental Protection Agency v. Mink, supra. Assuming that this Court has discretion to require that the information be made public after it has been shown to be an investigatory file, that discretion mandates that the information here sought be kept secret pending the disposition of any possible indictments.
However, an exception to exemption (b)(7) exists. The investigatory files are not protected from disclosure to the extent that they are "available by law to a party other than an agency." This language is similar to that contained in exemption (b)(5) which exempts interagency memoranda "which would not be available by law to a party other than an agency in litigation with the agency." The phrase "by law" in (b)(5) refers to that which is discoverable under the Federal Rules of Civil Procedure. Environmental Protection Agency v. Mink, supra, 410 U.S. at 85-86, 93 S.Ct. 827; General Services Administration v. Benson, 289 F.Supp. 590, 594-595 (W.D.Wash.1968), affirmed, 415 F.2d 878 (9th Cir.1969); Consumers Union of United States, Inc. v. Veterans Administration, supra 301 F.Supp at 804. Further, "a party", as used in (b)(5) does not mean a party in actual litigation with the agency but rather any hypothetical party that conceivably could be in litigation with the agency. Benson v. General Services Administration (district court opinion) supra 289 F.Supp. at 595; Consumers Union of United States, Inc. v. Veterans Administration, supra, 301 F.Supp. at 804. In Environmental Protection Agency v. Mink, supra, 410 U.S. at 85-86, 93 S.Ct. at 835, the Supreme Court, in referring to exemption (b)(5), stated, "This language clearly contemplates that the public is entitled to all such memoranda or letters that a private party could discover in litigation with the agency." (emphasis added). The posture of that case clearly shows that the Court was referring to a hypothetical party rather than an actual party in litigation with an agency. But see, Weisberg v. United States Department of Justice, supra, 489 F.2d at 1203 f. n. 15 for a contrary interpretation of that same language.
Although the language of (b)(5) and (b)(7) is notably similar, the legislative history of (b)(7) requires a different construction. As stated in H.R.Rep. No. 1497, 89th Cong., 2nd Sess. 11, U.S. Code Cong. & Admin.News p. 2428 (1966), "S. 1160 is not intended to give a private party indirectly any earlier or greater access to investigatory files than he would have directly in such litigation or proceedings." A construction of (b)(7) in conformity with the interpretation given (b)(5) would not only give a private party earlier and greater access to investigatory materials, but would also give the general public similar access. This is in direct conflict with the purpose of the (b)(7) exemption. As stated in Williams v. Internal Revenue Service, 345 F.Supp. 591, 593 (D.Del.1972) affirmed 479 F.2d 317 (3rd Cir.1973), "If this is the meaning of The Freedom of Information Act, [referring to a construction of (b)(7) in which "by law" means in accordance with the Federal Rules of Civil Procedure as in (b)(5)] it automatically follows that anyone under law enforcement investigation by the government has a right to material contained in the files of the government prior to the institution of court action if he can meet the discovery requirements of the Federal Rules. . . . Such a result clearly was not anticipated or intended by Congress when it adopted The Freedom of Information Act."
Therefore this court holds that the language "by law" contained in 5 USC 552(b)(7) does not refer to the *1241 Federal Rules of Civil Procedure but rather to specific statutes which allow access to the information in particularized circumstances. See Williams v. Internal Revenue Service, supra, 345 F. Supp. at 594. Further, the language, "a party" for the purpose of the (b)(7) exemption does not refer to a hypothetical party as in the (b)(5) exemption, but rather refers back to the definition of "party" found in 5 USC 551(3). Weisberg v. United States Department of Justice, supra, 489 F.2d at 1203, f. n. 15. That section defines a party in terms of a person actually participating in litigation or entitled of right to be admitted as a party. The Court recognizes that this interpretation of the exception to exemption (b)(7) nearly defeats the exception, but to interpret this provision in a manner similar to (b)(5) extinguishes 5 USC 552(b)(7). The (b)(7) exemption is properly applicable to prevent disclosure if the information sought is contained within an investigatory file compiled for law enforcement purposes, and the person demanding disclosure is not a party to the litigation with an independent legal right to the investigatory materials sought to be disclosed. This particularly is true if criminal prosecutions are contemplated in the foreseeable future.
Since the court has found that the material sought to be disclosed properly is within the ambit of the (b)(7) exemption and since the present plaintiff obviously is not a party to any possible future criminal prosecutions, the Anchorage Building Trades Council has no right to the information sought to be disclosed under 5 USC 552(a)(3). The Court's holding that the information is exempt from disclosure under exemption (b)(7) renders unnecessary a decision as to whether an exemption exists under (b)(4).
Accordingly, it is ordered:
That plaintiff's action is dismissed with prejudice.