## BALTIMORE BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO *v.* J. GORDON BARNES ET AL.

[No. 32, September Term, 1980.]

*Decided April 2, 1981.*

10

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Howard J. Schulman,* with whom was *Peter G. Angelos* on the brief, for appellant.

*Leland S. Van Koten,* with whom were *H. Emslie Parks* and *Wright & Parks* on the brief, for J. Gordon Barnes, one of appellees; *Stephen H. Sachs, Attorney General,* and *Henry R. Wolfe, Assistant Attorney General,* on the brief, for Commissioner of Labor and Industry, other appellee.

SMITH, J., delivered the opinion of the Court. ELDRIDGE, J., dissents and filed a dissenting opinion at page 29 *infra.*

We shall here hold that a labor union council composed of a number of unions is not an "interested person" within the meaning of Maryland Code (1957, 1979 Repl. Vol.) Art. 100, § 101 (c) pertaining to a hearing before the Commissioner of Labor and Industry on a complaint that the employer has violated Art. 100, §§ 96-107A, the Maryland Prevailing Wage Law (the Act), as to the rate of wages to be paid on a public works project.[1] Accordingly, we shall affirm the judg-

1. The last amendment to Art. 100, § 101 (c), with which we are here concerned, was by Chapter 293 of the Acts of 1970. By Chapter 775 of the

ment of the Court of Special Appeals in *Barnes v. Comm'r of Labor & Indus.,* 45 Md. App. 396, 413 A.2d 259 (1980).

Section 101 (c) states in pertinent part:

> (c) *Hearing; filing of order.* — Within thirty (30) days after an investigation has been completed, the Commissioner shall order a hearing thereon at a time and place to be specified and shall give notice thereof . . . [to] all interested persons, including the interested public body. Every interested person shall have an opportunity to be heard in respect to the matters complained of . . . . The Commissioner in such an investigation and hearing shall be deemed to be acting in a judicial capacity and shall have the right to issue subpoenas, administer oaths, and examine witnesses. . . . [U]pon such hearing and investigation, the Commissioner shall determine the issues thereon and shall make and file an order in his office stating such determination and forthwith serve a copy of such order, together with notice of filing upon the public body interested, and the parties to such proceeding . . . .

The controversy here grows out of two public school construction projects, one in Harford County and the other in Baltimore County, both of which were subject to the Act. As a result of a complaint to the Commissioner that Barnes was not paying the proper wage rate to persons doing steam fitting work, the Commissioner undertook an investigation as provided in § 101 (a).

Baltimore Building and Construction Trades Council, AFL-CIO (the Council), according to its petition for intervention in the Circuit Court for Baltimore County, "is composed of all construction trade unions in the Baltimore Metropolitan area and other localities within the State of Maryland." Its membership includes the United Association

---

Acts of 1980, effective July 1, 1981, these provisions are embodied in Code (1957, 1973 Repl. Vol., 1980 Cum. Supp.) Art. 21, §§ 8-501 to -515, inclusive.

of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, Plumbers Local No. 48 and Steamfitters Local No. 438.

Barnes is a non-union contractor. Its employees have no collective bargaining representative. There is no indication in the record here that a union which is a member of the Council in fact represents any of the employees of Barnes.

The Commissioner designated a hearing examiner to conduct the hearing. An attorney for the Council was present. Barnes' attorney objected to this presence, citing *Hyson v. Montgomery County,* 242 Md. 55, 217 A.2d 578 (1966), in which he said we "specifically held that an interested person within the meaning of the Administrative Act means only an aggrieved person entitled to appeal," which he said the Council was not. The hearing examiner declared the Council to be "an interested person" and allowed its representative to remain, to participate in the hearings, to cross-examine witnesses, and to present argument. At the end of the third day of the hearing it appeared that the Commissioner, acting through an assistant Attorney General, had concluded his case. When the hearing examiner inquired of Barnes' attorney whether he wished a continuance before commencing his client's case, counsel for the Council indicated his desire to subpoena certain records and witnesses from Barnes. The Commissioner issued subpoenas pursuant to this request. At the time designated for their return Barnes advised that it would not comply. The stated grounds for noncompliance, among others, were that the subpoenas were issued solely at the request of the union which was not an "interested person" within the meaning of the statute, that it therefore was not entitled to participate in the proceeding, and that the subpoenas were not issued for any legitimate purpose of the Commissioner. The Commissioner enlisted the aid of the Circuit Court for Baltimore County to compel compliance with the subpoenas. That court directed compliance. The Court of Special Appeals reversed in a comprehensive and well-reasoned opinion by Judge Wilner, concluding:

We ... see a significant difference between wage rate determination proceedings under §§ 98 and 99 and specific compliance proceedings under § 101 (c). The former, as noted, has broad economic implications for many different groups and entities; the latter is for the particular benefit of the employees directly affected — those allegedly being paid less than the law requires. The sole purpose of a § 101 (c) proceeding is to secure *to those employees working on the public project* the wages to which they are entitled.

In this regard, there is another distinction to be drawn. When a union actually represents the employees involved, its interest in a compliance proceeding is primarily a derivative one; it is the *employees'* interest being represented and asserted, not that of the union itself. The union thus assumes, vicariously, the status of the employees themselves; that is what would make it, under that circumstance, an "interested person." This, of course, is not true where the union does not represent the affected employees. In that instance, the interest being asserted by the union is purely a personal one of its own. That interest may or may not be consistent with the interest of the employees on the job, depending upon the overall circumstances of the case; but regardless, the union, in that situation, is a complete stranger to the parties, to the transaction, and to the object of the proceeding.

For these reasons, we find that the Commissioner and the Circuit Court erred in deeming the unions to be "interested persons" in the administrative proceeding. They had no right to participate in the proceeding, no right to initiate the subpoenas, and no right to the records sought by the subpoenas. Accordingly, under the facts before us, we conclude that the subpoenas were improperly issued . . . . [*Id.* 45 Md. App. at 413 (emphasis in original).]

We granted the writ of certiorari.

The Council presents the question as:

> The Court of Special Appeals erred by applying an improper and unconstitutional standard of review to the action of an administrative agency so as to substitute its judgment for that of the Commissioner of Labor and Industry that building and construction trade unions are "interested persons" within the meaning of Md. Ann. Code Art. 100, Section 101 (c).

It claims the Commissioner applied longstanding rules of statutory construction in reading the phrase here in pari materia with other sections of the Act. It suggests that the issue is whether there was proper deference to the Commissioner's interpretation.

The Council misunderstands the standard of review. We pay great deference to findings of fact of an administrative agency since it has heard and observed the witnesses. The standard for review of the decision of an administrative agency was stated for the Court by Chief Judge Hammond in *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 309, 236 A.2d 282 (1967), as "whether a reasoning mind reasonably could have reached the *factual* conclusion the agency reached." (Emphasis added.) This has been repeated in a host of cases since then. *See, e.g., Resetar v. State Bd. of Education,* 284 Md. 537, 554, 399 A.2d 225 (1979); *Folly Farms I, Inc. v. Trustees,* 282 Md. 659, 670, 387 A.2d 248 (1978); *Shell Oil Co. v. Supervisor,* 278 Md. 659, 670, 366 A.2d 369 (1976); and *Pemberton v. Montgomery County,* 275 Md. 363, 367-68, 340 A.2d 240 (1975). Here, however, the review is one of law. It is true that as we stated in *Holy Cross Hosp. v. Health Services,* 283 Md. 677, 685, 393 A.2d 181 (1978), in the matter of statutory construction it is well understood that the view taken of a statute by administrative officials soon after its passage is strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most

urgent reasons. *See, e.g., F. & M. Schaefer v. Comptroller,* 255 Md. 211, 218, 257 A.2d 416 (1969); *Smith v. Higinbothom,* 187 Md. 115, 132-33, 48 A.2d 754 (1946); and *John McShain, Inc. v. Comptroller,* 202 Md. 68, 73, 95 A.2d 473 (1953), and cases cited in each. However, as Judge Delaplaine said for the Court in *Rogan v. Baltimore & O. R. R.,* 188 Md. 44, 58, 52 A.2d 261 (1947), "[W]here the language is plain and unambiguous, the judicial construction cannot be controlled by extraneous considerations. No custom, however venerable, can nullify the plain meaning and purpose of a statute." *Schaefer* could be cited for the latter proposition because we there held, despite the prior construction by the Comptroller, that his "rule as [t]here sought to be applied [was] an invalid attempt to render taxable that which the General Assembly ha[d] precisely defined as not taxable." 255 Md. at 219.

This Court has stated the rules for statutory construction many times. The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. A court may not insert or omit words to make a statute express an intention not evidenced in its original form. Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *See Police Comm'r v. Dowling,* 281 Md. 412, 418-19, 379 A.2d 1007 (1977), citing a number of our cases for these propositions and, more recently, *Dorsey v. Beads,* 288 Md. 161, 175-76, 416 A.2d 739 (1980), and *Messitte v. Colonial Mortgage Serv.,* 287 Md. 289, 293-94, 411 A.2d 1051 (1980).

The Council's pari materia argument is derived from a reference to § 98 (a) dealing with the initial determination of prevailing wage rates by the Commissioner and § 99 (a) providing for an evidentiary reconsideration of a prevailing

wage determination made by the Commissioner pursuant to § 98. In § 98 (a) the Commissioner is required to "give notice by mail of all determinations of prevailing wage rates made pursuant to th[at] section to any representative of any classification, any employer, or any representative of any group of employers who in writing requests the Commissioner so to do." Section 99 (a) provides that among others "any representative of any classification of workmen . . . may file with the Commissioner a verified petition, which sets forth the facts upon which it is based, to review the determination of any prevailing wage rate or rates." Then the Commissioner is obliged to give notice to, among others, "the recognized collective bargaining representatives for the particular classifications involved, and also to all persons entitled to receive notice pursuant to subsection (a) of § 98 . . . ." The section then goes on to provide, "The Commissioner or any interested parties thereafter may introduce any evidence that is material to the issues." It will be seen at once that in §§ 98 (a) and 99 (a) the General Assembly referred to "any representative of any classification" and to "the recognized collective bargaining representatives for the particular classifications involved," while the reference here is to "interested persons" and "interested person."

The Council's *pari materia* argument proves too much.

The reference to interested persons appears in the following context in subsection (c) of the "investigations" section (§ 101 (c)):

> Within thirty (30) days after an investigation has been completed, the Commissioner shall order a hearing . . . and shall give notice thereof . . . which notice shall be served . . . on all interested persons, *including the interested public body.* Every interested person shall have an opportunity to be heard . . . . [Emphasis added.]

For the words "[e]very interested person" to include "any representative of any classification," as the latter phrase is used in preceding sections, then "[e]very interested person" would necessarily embrace the requesting public body and

"any employer, or any representative of any group of employers" who in writing request the Commissioner to give them notice of a determination, under the determination section (§ 98 (a)). This construction also would embrace, as enumerated in the review section (§ 99 (a)), "the petitioner, the public body authorizing the public work, and the recognized collective bargaining representatives for the particular classifications involved, and also . . . all persons entitled to receive notice pursuant to" the determination section.

Under an analysis whereby each "interested person" includes the categories described in the preceding sections, the express inclusion of the "interested public body" in the investigations section is merely surplusage. The more reasonable interpretation is that, in the context of the investigations section, the interested persons basically are the immediate payor and payees of the wages. Under this reading the phrase "including the interested public body" becomes a term of expansion. The public body which will pay for the work, whether under a lump sum, cost plus, units of materials or other type of contract, is also a proper party to the investigation hearing. For this reason the Commissioner has exceeded the limitations of the statute in his administrative interpretation.

In support of its position the Council points to the fact that under § 101 (d) "[t]he Commissioner is . . . authorized and empowered to make any and all rules and regulations from time to time, that may be necessary to effectuate the purposes of th[at] subtitle" and the fact that §§ A, B, C, D, F, G, H, I, J, K, and L of COMAR .09.12.51.03, .09.12.51.04, and .09.12.51.05 are identical. COMAR .09.12.51.05 reads in pertinent part:

> **.05 Rules of Procedure for Hearing on Non-compliance with Provisions of Prevailing Wage Law.**
> \* \* \*
>
> D. Counsel for any interested party may be heard on any preliminary objections, exceptions, or

motions, and any stipulations entered into by interested parties at the hearing shall then be received.

* * *

H. Any party of interest may introduce any testimony or other evidence in rebuttal or of any affirmative nature. Any witness so introduced shall be subject to cross-examination.

I. Any party of interest may directly or through his attorney make any statement or argument relevant to the hearing.

The regulations must be read in the context of that to which they apply, in this instance to procedures for a hearing concerning alleged noncompliance with provisions of the prevailing wage law. An "interested party." or "party of interest" in the initial determination of prevailing wage rates or the reconsideration of a prevailing wage determination which would apply to *all* employers of specific work classifications on public works projects in a given area, to *all* unions in that area whose members held that classification and who were so employed on public works, and to *all* employees of such classifications on such projects in that area is not necessarily an "interested person" in a determination as to whether a specific employer has failed to comply with the law. The Commissioner may no more expand by rule the definition or meaning of "interested person" as it appears in the statute than the Comptroller by rule may "render taxable that which the General Assembly has precisely defined as not taxable." *Schaefer,* 255 Md. at 219. Hence, we turn elsewhere in our analysis of the problem.

The Federal counterpart of our prevailing wage law is the Davis-Bacon Act, 40 U.S.C. §§ 276a — 276a-5 (1976). It has no provision similar to Art. 100, § 101 (c) relative to an administrative determination upon complaint that an employer is not paying the prescribed wage. Enforcement is under § 276a-1 providing that if it is found by the contracting officer that the prescribed wages are not being paid the contract may be terminated for "work as to which there has been a failure to pay said required wages" with the

contractor's being liable to the Government for any excess costs occasioned thereby. See also § 276a-2 pertaining to payment of wages by the Comptroller General from withheld payments and a listing of contractors violating their obligations. Provisions for enforcement are set out in Labor, 29 C.F.R. §§ 7.1-7.8 (1980), pertaining to the Wage Appeals Board. Section 7.2 (a) pertains to the right of an interested person to seek a modification or other change in a wage determination. Accordingly, § 7.2 (b) is of interest here since it states:

> (b) For purpose of this section, the term "interested person" is considered to include, without limitation:

> (1) Any ... labor organization which represents a laborer or mechanic, who is likely to be employed or to seek employment under a contract containing a particular wage determination ....

It will be recalled that there is no indication in the record here that any of the employees of Barnes were members of a union which is a member of the Council at the time of the complaint and that the employees of Barnes have not chosen one of such unions as their collective bargaining representative. Given this broad definition that a union representing a laborer "*likely* to be employed or to seek employment under a contract" would be an interested person and the further fact that cases upon which the Council relies such as *North Georgia Bldg. & Const. Trades v. Goldschmidt*, 621 F.2d 697 (5th Cir. 1980); *Anchorage Bldg. Tr. Coun. v. Department of H. & U. D.*, 384 F. Supp. 1236 (D. Alaska 1974); and *International U. of Operating Eng., Local 627 v. Arthurs*, 355 F. Supp. 7 (W.D. Okla. 1973), arise in contexts different from the case at bar, the Federal cases are not persuasive. (Emphasis added.)

In situations analogous to that in the case at bar two State courts have held unions not to be interested persons or parties, *Yerry v. Goodsell*, 4 A.D.2d 395, 166 N.Y.S.2d 224 (1957), and *Chauffeurs, Teamsters & Helpers v. WERC*, 51 Wisc. 2d 391, 187 N.W.2d 364 (1971). In *Yerry* a school board

had undertaken the reconstruction and repair of a public school building, using its regular maintenance employees, who were paid their regular salaries. A union charged the board with violations of a statute relative to prevailing wages. The court said on administrative appeal from a dismissal of the complaint that the statute made clear "that only an employee or a person acting on his behalf is a 'person interested' entitled to file a complaint . . . upon the basis of which the fiscal officer is required to hold a hearing." *Id.* at 230. It held that a "person interested" authorized to file a verified complaint "must be a person who may become entitled to recover as a complainant . . . ." *Id.* at 230-31. The court there said further:

> Notice of hearing is required to be given under sub-division 8 to "any person or corporation affected thereby." This term has been strictly construed to mean only the employee filing the complaint and the person or corporation employing him (Heaney v. McGoldrick, 286 N.Y. 38, 35 N.E.2d 641; Campbell v. City of New York, 291 N.Y. 461, 52 N.E.2d 949, supra). In the Heaney case, it was held that even a fellow employee, who had failed to file a complaint of his own, was not a person "affected thereby" and hence it was held that he was not entitled to notice of the hearing (286 N.Y. at page 44, 35 N.E.2d at page 644). *A fortiori,* it must be held that a stranger to the employment relationship is not a person "affected" within the meaning of the statute.
>
> The statute provides for review of the determination of the fiscal officer by any "aggrieved" party but a stranger could not be "aggrieved" by the determination, since it could not possibly affect any right of action or any liability on his part. Hence, if a stranger were allowed to file a verified complaint as an interested person under subdivision 7, we would have the anomalous situation that he would not be entitled to a notice of hearing because he would not be a person "affected" and he would not

be entitled to review any determination because he would not be "aggrieved" and, obviously, he could not seek a recovery as a "complainant" under subdivision 8 since he could not have any possible basis for a claim for loss of wages. [*Id.* at 231.]

In the Wisconsin case a union filed an unfair labor practice charge against an employer alleging that he was not paying the prevailing wage as required by a Wisconsin statute. The court there said:

Obviously Local 200 has an interest in Gerovac's employment practices in this case. But is it of such a nature that it must bring an unfair labor practice charge before the WERC in order to protect it? And is it unreasonable for the WERC to hold that Local 200 *may not* do so?

The WERC holds that it interprets sec. 111.07 (2) (a), Stats., a jurisdictional statute, as limiting "parties in interest" to those engaged in "controversy as to employment relations," defining such controversies as those involving an employer and his employees or their representational labor organization. Further, the WERC, under some circumstances, extends "party in interest" status to a labor union that is seeking representation. However, it will not extend such status to Local 200, who neither represents nor purports to represent Gerovac's employees. Despite Local 200's admitted interest in area standards, there are good reasons to uphold the WERC's position. [*Id.* at 403 (emphasis in original).]

Our own cases shed light upon the controversy here. In *Edwardsen v. State,* 243 Md. 131, 220 A.2d 547 (1966), the Court was faced with a contention that a trial judge had abused his discretion in denying a change of venue. This was based on the fact that the judge who sat at the second trial was one of the panel of judges who, under the procedure then prevailing in Baltimore City, had heard and denied a motion

for a new trial following the original conviction. The contention was based on Maryland Constitution Art. IV, § 7 providing that no judge shall sit in any case "wherein he may be interested . . . ." It was thus contended that the trial judge had an interest in the outcome of the case. Judge Horney referred for the Court to *Ex Parte Bowles,* 164 Md. 318, 165 A. 169 (1933), and said, "[T]he word 'interested' in the context of the constitutional prohibition refers to a pecuniary interest in the litigation or the result thereof. There was no such interest here." *Id.* at 137.

In *Hyson v. Montgomery County,* 242 Md. 55, 217 A.2d 578 (1966), relied upon by the Court of Special Appeals and cited by Barnes to the hearing examiner, the Court was involved with an interpretation of Montgomery County Code (1960) § 104-39 (b) providing, "Any interested person shall have the right to submit oral or written testimony at the hearing," referring to one held under a zoning ordinance pertaining to the question of zoning or reclassification. Chief Judge Prescott there said for the Court:

> The "interested" persons mentioned therein are, we think, the same class of persons who can qualify as "aggrieved persons" under our decisions relative to qualifications to be entitled to appeal. It scarcely can be seriously argued the legislative body intended that any and all persons, irrespective of where they lived or owned property, or the nature of "interest" they might have, such as the signers of the petitions, offered by appellants, living in the District of Columbia and Virginia (the subject property is located a very considerable distance from the boundaries of that State and District), were entitled to be heard. [*Id.* at 69.]

In *Ex Parte Bowles, supra,* referred to by the Court in *Edwardsen,* the Court was concerned with the question of whether a judge was "interested" in the context of the constitutional provision to which we have previously made reference where his son was the attorney for the defendant, the son's father-in-law. The son had no pecuniary interest in

the outcome of the case.[2] Judge W. Mitchell Digges said for the Court:

> He had no such interest in the case as would disqualify him under the constitutional provisions (the word "interest" as therein employed having reference to a pecuniary interest in the litigation or the result thereof); he was not connected with either of the parties by affinity or consanguinity within the prohibited degrees; nor had he been of counsel in the case. [*Id.* at 326.]

Analogous to "interested person" as indicated in *Hyson*, is that of "aggrieved party." In *Pattison v. Corby*, 226 Md. 97, 172 A.2d 490 (1961), Judge Horney said for the Court:

> The general rule is that one is not an aggrieved party so as to be entitled to appeal unless the judgment or order appealed from was rendered on a matter in which the appellant has some interest or right of property. *Patterson v. Gelston*, 23 Md. 432 (1865). [*Id.* at 101.]

This definition has been followed in *Kicherer v. Kicherer*, 285 Md. 114, 118, n.4, 400 A.2d 1097 (1979); *Mayor v. Shearwater Sailing*, 265 Md. 280, 285-86, 288 A.2d 887 (1972); and *Bryniarski v. Montgomery Co.*, 247 Md. 137, 144, 145, 230 A.2d 289 (1967).

More recently in *Reyes v. Prince George's County*, 281 Md. 279, 380 A.2d 12 (1977), Judge J. Dudley Digges said for the Court:

> We have adopted, as the definition of a justiciable issue or controversy, that given in 1 W. Anderson, *Actions for Declaratory Judgments* 67 (2d ed. 1951):

---

2. This decision was handed down almost forty years before our adoption of the Rules of Judicial Ethics, now embodied in Maryland Rule 1231, the second of which states that a judge "shall not exercise his duties with respect to any matter in which a near relative by blood or marriage is a party, has an interest, or appears as a lawyer." For generations prior to the adoption of that rule sons of judges in this State frequently appeared before courts, trial and appellate, upon which their fathers sat.

> "A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded." See *Harford County v. Schultz,* [280 Md. 77] at 81 [, 371 A.2d 428,] 430 [(1977)]; *Hamilton v. McAuliffe,* 277 Md. 336, 340, 353 A.2d 634, 637 (1976); *Patuxent Co. v. Commissioners,* 212 Md. 543, 548, 129 A.2d 847, 849 (1957). Since adverse claims are asserted here upon a state of facts which has accrued[,] . . . the only additional requisite for the existence of a justiciable controversy is that the parties asserting the adverse claims be "interested." We think the sole intendment of this requirement is that the plaintiff have standing to seek the declaration, since any person entitled to invoke the judicial process in a particular instance has, by virtue of that entitlement, already been defined to be an interested party. [*Id.* at 288.]

Under the original Maryland version of the Uniform Declaratory Judgments Act, Code (1939, 1947 Cum. Supp.) Art. 31A, § 2 "[a]ny person interested . . . or whose rights, status or other legal relations are affected by a statute" was permitted to "have determined any question of construction or validity, arising under the . . . statute . . . ." [3] In *Md. Naturopathic Ass'n v. Kloman,* 191 Md. 626, 62 A.2d 538 (1948), a suit was brought by the Maryland Naturopathic Association, Inc., against the physicians constituting the Maryland Board of Medical Examiners. It sought an injunction and a declaratory decree that the system of healing known as naturopathy was not included in the practice of medicine as regulated by the State Medical Practice Act. The case is analogous to the one at bar since it was brought on behalf of the members of the association engaged in the practice of naturopathy. Judge Delaplaine said for the Court:

---

3. Now Maryland Code (1974, 1980 Cum. Supp.) § 3-406, Courts and Judicial Proceedings Article.

The Naturopathic Association cannot itself practice naturopathy. It has no property interest which may be affected by any of the alleged acts of defendants, and accordingly it has no right to enter this suit against them. The Association does not seek any relief for itself. It cannot complain of any action which does not affect it, but affects individuals, even though those individuals compose its membership. Thus, in *Dvorine v. Castelberg Jewelry Corporation,* 170 Md. 661, 668, 185 A. 562 [(1936)], where the State Board of Examiners in Optometry and also the Maryland Association of Optometrists brought suit for injunction against the jewelry corporation, this Court said that, while the question of the propriety of joining the various parties was not raised in the lower Court, it was apparent that the Maryland Association had no right to bring suit. [*Id.* at 630-31.]

Views similar to those expressed by this Court are found in *Adamszewski v. Local Lodge 1487, Int. Ass'n of M. & A. Wkrs.,* 496 F.2d 777 (7th Cir. 1974); *Citizens National Bank of Lubbock v. Speer,* 202 F.2d 491, 492 (5th Cir. 1953); *Nello L. Teer Company v. United States,* 348 F.2d 533 (Ct. Cl. 1965); *Associated Boat Industries v. Marshall,* 104 Cal. App. 2d 21, 230 P.2d 379 (1951); *Baden Borough v. Chamberlain,* 191 Pa. Super. Ct. 367, 156 A.2d 594 (1959); and *Blk. River Elec. Coop., Inc. v. S. C. P. S. C.,* 238 S.C. 282, 120 S.E.2d 6 (1961).

In *Adamszewski* in the context of an argument as to whether an employer was an "interested employer" within the meaning of the Labor-Management Reporting Disclosure Act of 1959, 29 U.S.C. § 411 (a) (4) (1976), the court said:

[T]he district court did not err when it decided that interested meant "having an interest in something; concerned." American College Dictionary 635 (1970). More precisely, interested can be defined as: "having a share or concern in some project; liable to

be affected or prejudiced; also having self-interest. . . ." Webster's New Collegiate Dictionary 439 (1960). Having a concrete interest in the litigation means having a share or concern in the litigation, liable to be affected by it. We decide that this is the meaning intended by Congress when it added the word "interested" to the proviso. [*Id.* 496 F.2d at 784.]

In *Teer* there was litigation before the Court of Claims arising out of the Davis-Bacon Act. A contractor on a Government project sought to recover on the amount it contended it was required to pay in excess of proper wages to certain hired equipment operators under an allegedly improper wage determination by the Department of Labor. Involved was the question of whether the Secretary of Labor had properly settled the wage dispute, it being the contention of Teer that the authority to so settle was applicable only when the "interested parties" were unable to agree that an omission had been previously made, contending this meant "only the contractor and laborers." *Id.* 348 F.2d at 538. The court said:

We find plaintiff's construction of the term "interested parties" indeed a strained one. Plaintiff has cited us no authority for the proposition that an interested party in a Government contract does not include the Government. We cannot think of any situation where the Government would not be an interested party in one of its contracts. [*Id.* at 538.]

Although it does not involve a labor dispute, *Associated Boat Industries* is analogous to the case at bar because there a nonprofit corporation whose membership comprised builders and distributors of, and dealers in, new boats, ships and yachts contended that since its members were subject to regulations it was an "interested person" within the meaning of a California statute providing, "Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief

in the superior court in accordance with the provisions of the Code of Civil Procedure. . . ." The court said:

> The Legislature, in using the words "any interested person" had before it long established legislative precedents which make it clear that an "interested person" in the sense in which those words are used in the statute is a person having a direct, and not a merely consequential, interest in the litigation. [*Id.* 104 Cal. App. 2d at 22.]

This holding, of course, was in accord with our own holding in *Md. Naturopathic Ass'n,* 191 Md. 626.

In the context of an assessment statute the court in *Baden Borough* said:

> We believe that the term "any party interested", as used in the statute, refers to a party whose property is affected, in one way or another, by the assessments as determined by the viewers or a municipality whose claim for reimbursement is adversely affected. [*Id.* 191 Pa. Super. Ct. at 371.]

In *Black River Electric Coop.* the point at issue was whether an electric cooperative had standing to make a request for a cease and desist order before the South Carolina Public Service Commission and whether the latter had jurisdiction to hear such a request. The cooperative was opposing an application by a utility company. It had no exclusive right to serve the area in controversy. The statute provided that "any interested person, corporation or municipality" might file a complaint with the commission. The court said:

> We think that an "interested" person or corporation is one who has a legal right which will be injuriously affected by the proposed construction or operation. Nowhere do we find that an electric cooperative is given an exclusive franchise to serve rural areas. Having no exclusive franchise to serve the area in controversy, no legal right of appellant

will be invaded by the Power Company's competition. [*Id.* 238 S.C. at 295.]

In this instance the term "interested person" does not appear among the definitions in § 96. However, it is interesting to note that § 96 (a) provides, "As used in this subtitle, unless the context indicates otherwise, the words in this subtitle have the meanings given them," a clear recognition on the part of the General Assembly that there could be a variance in meanings depending upon the context in which the word or term was used. As we have previously pointed out, in § 98 the Commissioner is engaged in determining the prevailing wage in a given area for a given type of work. In § 99 he is concerned upon request in reviewing such determination. These actions in §§ 98 and 99 have meaning to and a bearing upon *all* employers of that particular type of labor on public works projects in a specific area and *all* persons doing this type of work on such projects. Here we are concerned with a complaint against a specific employer under § 101. The Court has stated that "[i]t is recognized that the meaning of the plainest words in a statute may be controlled by the context. A statute should be so construed that all its parts harmonize with each other and render them consistent with its general object and scope." *Associated Acceptance v. Bailey,* 226 Md. 550, 556, 174 A.2d 440 (1961). As it was put in *Maguire v. State,* 192 Md. 615, 623, 65 A.2d 299 (1949), "Adherence to the meaning of words does not require or permit isolation of words from their context." See also *Pittman v. Housing Authority,* 180 Md. 457, 463-64, 25 A.2d 466 (1942).

The Council here sought that which the Commissioner, the official charged with enforcement of the statute, had not deemed necessary. In this statute when the General Assembly desired that unions be given specific notice, it said so. No specific reference to notice to unions is made in § 101 (c). The term "interested person" here was used in the context of a party to the hearing whose rights or position would be directly affected by the outcome, not in the sense of academic interest, curiosity, or a well-meaning desire that a specific

determination be made by the administrative agency. As Judge Wilner so forcefully put it for the Court of Special Appeals, the Council "had no right to participate in the proceeding, no right to initiate the subpoenas, and no right to the records sought by the subpoenas." *Id.* 45 Md. App. at 413. Accordingly, we hold that the subpoenas were improperly issued.

> *Judgment affirmed; appellant to pay the costs.*

*Eldridge, J., dissenting:*

In my view, the Commissioner of Labor and Industry was justified in taking the position that a labor organization may be an "interested person" in an administrative proceeding to resolve alleged violations of the prevailing wage law, even though the organization does not represent the workers performing the contract at issue. The language of the pertinent statutory provision,[1] the general purpose behind prevailing wage legislation, and proper deference to the view of the administrative agency in a specialized area such as this, all support the Commissioner's construction of the statute. Accordingly, I disagree with the majority's conclusion that the subpoenas were improperly issued.

As the majority notes, the central purpose behind prevailing wage legislation is protection of workers from substandard wages on government projects. *United States v. Binghamton Construction Co.,* 347 U.S. 171, 177, 74 S. Ct. 438, 441, 98 L. Ed. 594 (1954). A union, on the other hand,

---

1. The relevant part of the Maryland Prevailing Wage Law, Maryland Code (1957, 1981 Repl. Vol.), Art. 21, § 8-507 (c), reads as follows:

"(c) *Hearing; filing of order.* — Within 30 days after an investigation has been completed, the Commissioner shall order a hearing thereon at a time and place to be specified and shall give notice thereof, together with a statement of the facts disclosed upon such investigation, which notice shall be served personally or by mail *on all interested persons,* including the interested public body. *Every interested person* shall have an opportunity to be heard in respect to the matters complained of, at the time and place specified in such notice, which time shall not be less than 10 days from service of the notice. . . ." (Emphasis supplied.)

has an interest in protecting the job security and economic status of those workers comprising its membership. A prevailing wage law assists a union in obtaining its goals by preventing contractors from basing successful bids for government contracts upon substandard wage schedules.

The Maryland Legislature has expressly recognized the interest of a labor union in the prevailing wage law. Art. 21, § 8-505 (a), of the Code, permits "any representative of any classification of workmen" to petition the Commissioner of Labor and Industry for review of a prevailing wage determination. However, a union's interest in a public works contract does not cease when the appropriate wage determination has been made and the contract has been awarded. The union retains an interest in assuring that the contractor who bid successfully follows the requirements of the very prevailing wage determinations that formed the basis upon which all participating contractors should have formulated their bids. If a union is not permitted to participate in enforcement proceedings, it is hindered in protecting its members from unemployment caused by an unethical nonunion contractor submitting the lowest bid for a government contract, intending to violate prevailing wage laws.

While the enforcement provisions of Art. 21, § 8-507, do not specifically provide for participation of labor organizations, the statutory language that "[e]very interested person shall have an opportunity to be heard in respect to the matters complained of" is very sweeping. The words are sufficiently broad to support the Commissioner's decision that petitioner could validly participate in a hearing on respondent Barnes's alleged violation of the prevailing wage laws, in order to protect the interests of its members.

The federal prevailing wage law, or Davis-Bacon Act, 40 U.S.C. §§ 276a — 276a-5 (1976), provides persuasive authority for construing the state act. While there is no provision comparable to Art. 21, § 8-507, the federal statute in 40 U.S.C. § 276a-1 does provide for termination of a federal contract for failure to pay required prevailing wages. As the majority notes, the administrative regulations pertaining to this rule are set out in 29 C.F.R. §§ 7.1 — 7.8

(1980). Section 7.2 deals with the right of "any interested person" to seek a modification of a determination of the Wage Appeals Board. "Interested person" includes:

> "[a]ny contractor, or an association representing a contractor, who is likely to seek or to work under a contract containing a particular wage determination, or any laborer or mechanic, or *any labor organization which represents a laborer* or mechanic, *who is likely to be employed or to seek employment under a contract containing a particular wage determination . . . ."* (29 C.F.R. § 7.2 (b) (1), emphasis supplied.)

Although the majority believes that the broad language of the above regulation renders federal cases such as *North Carolina Bldg. & C.T.C. v. U. S. Dept. of Transp.,* 399 F. Supp. 58, 63 (D. Ga. 1975), and *International U. of Operating Eng., Local 627 v. Arthurs,* 355 F. Supp. 7, 14-15 (D. Okla. 1973), *aff'd,* 480 F.2d 603 (10th Cir. 1973), valueless in interpreting the Maryland statute, both the federal regulation and the cases bolster my belief that the term "interested party" contained in Art. 21, § 8-505 (c), may validly be construed to include labor unions or associations of unions which do not represent the workers employed under a disputed prevailing wage contract, but which do represent workers employed or seeking employment under a different contract containing the same prevailing wage determination. *See Southeastern Wash. Bldg. v. Dept. of Labor,* 91 Wash. 2d 41, 586 P.2d 486, 488-489 (1978) (trades council standing upheld by court sitting en banc). *See also North Georgia Bldg. & Const. Trades v. Goldschmidt,* 621 F.2d 697 (5th Cir. 1980) (permitting trades council to bring suit under Davis-Bacon).

This Court has consistently recognized the deference to be given the construction of a statute by the agency administering that statute, when the applicable language will permit the administrative construction. *E.g., Holy Cross Hosp. v. Health Services,* 283 Md. 677, 685, 393 A.2d 181 (1978); *Demory Brothers v. Bd. of Pub. Works,* 273 Md. 320,

327, 329 A.2d 674 (1974); *Department v. Greyhound,* 247 Md. 662, 669, 234 A.2d 255 (1967). This deference is particularly appropriate in a specialized area such as labor relations, where the Commissioner of Labor and Industry has much greater expertise and experience in the application of the prevailing wage law than the courts have. *Cf. Board v. Hearst Publications,* 322 U.S. 111, 130-131, 64 S. Ct. 851, 860-861, 88 L. Ed. 1170, 1184-1185 (1944). The Commissioner's construction is clearly permissible under the generalized language of the statute. Certainly, his construction does not violate any "plain and unambiguous" meaning of the words themselves.

I believe that we should reverse the judgment of the Court of Special Appeals and uphold the order of the circuit court requiring compliance with the subpoenas issued by the Commissioner of Labor and Industry.