Dear Delegate Baldwin:
You have asked for our opinion on the applicability of Maryland's Prevailing Wage Law, State Finance Procurement Article, Section 17-201 et seq. to the construction of the infrastructure pertaining to the Redskins Stadium. Also, the Secretary of Budget and Management has been asked by counsel for the corporation which owns the Redskins to comment on whether the State Prevailing Wage Law applies to any of the infrastructure construction. The questions, taken together, address the applicability of the State Prevailing Wage Law to the construction of (a) the transportation-related infrastructure on the property owned by JKC Stadium, Inc. ("On-Site Infrastructure"), (b) the roads to be owned and maintained by Prince George's County which are located off the property site ("County Constructed Off-Site Infrastructure") and (c) the roads to be owned and maintained by the State Highway Administration ("State Constructed Off-Site Infrastructure"). For the following reasons, it is our opinion that the Maryland Department of Transportation ("MDOT") may, as a condition of its grants to Prince George's County, require the construction of the On-Site Infrastructure and the County Constructed Off-Site Infrastructure to be subject to the Prevailing Wage Law. Further, while the design and construction of the State Constructed Off-Site Infrastructure is exempted from the State Prevailing Wage Law under Chapter 600 of the 1996 Laws of Maryland, the State Highway Administration ("SHA") is not precluded from negotiating with a highway contractor to pay prevailing wages for that construction.
 I The Agreement
On March 13, 1996, the State of Maryland ("State"), Prince George's County ("County"), the Maryland-National Capital Park and Planning Commission ("Commission"), JKC Stadium, Inc. ("JKC Stadium"), Pro-Football, Inc., the owner of the Washington Redskins ("PFI") and Jack Kent Cooke Incorporated, the sole stockholder in JKC Stadium and PFI, entered into an agreement regarding the construction of the Redskins Stadium infrastructure. That agreement was modified by the General Assembly in the 1996 Budget Bill and by the Board of Public Works on March 27, 1996. Under the agreement and the Budget Bill, as it pertains to the issue we will discuss, the parties currently agree as follows:
(A) The Commission will sell approximately 200 acres to JKC Stadium for approximately 4.1 million dollars;
(B) JKC Stadium intends to construct a stadium in which the Washington Redskins will play its home games; the stadium will be built at JKC Stadium's sole cost and expense. (The cost for the stadium has been estimated at 150 to 200 million dollars);
(C) MDOT will provide a grant to the County for construction of the On-Site Infrastructure. The On-Site Infrastructure is comprised of parking lots to be owned and maintained by JKC Stadium, and County roads, which ultimately are to be owned and maintained by the County. JKC Stadium is to construct the On-Site Infrastructure but will do so primarily with the grant from MDOT.[1] The County has the responsibility to inspect the construction of the On-Site Infrastructure and to pay JKC Stadium within 30 days of receipt of an invoice.
(D) The County will be responsible for project management and construction of the County Constructed Off-Site Infrastructure but will delegate those responsibilities to JKC Stadium in a developer participation agreement between the County and JKC Stadium. The County will pay for the costs of the County Constructed Off-Site Infrastructure with the proceeds from a $12.5 million grant from MDOT to the County.[2]
(E) The State is responsible for the project management and construction of the State Constructed Off-Site Infrastructure, which it has funded via an appropriation to SHA.
(F) The Agreement also provides that there are separate funds from which the infrastructure costs are paid. These are the State On-Site Infrastructure Fund for funding the On-Site Infrastructure, the State Off-Site Grant for funding the County Constructed Off-Site Infrastructure, and the State Constructed Off-Site Infrastructure Fund for funding the State Constructed Off-Site Infrastructure.
(G) The Stadium is to be constructed by JKC Stadium with all funds for construction paid for by JKC Stadium.
1996 Legislative Action
A great deal of attention was directed this past Session to the funding and construction of the infrastructure surrounding the Redskins stadium. Of significance to the issues you raise are:
(A) In the Supplemental Budget, the General Assembly appropriated $22.5 million for MDOT to provide a grant for construction of the Redskins' Stadium parking lot and related infrastructure. That appropriation was justified as necessary to "relieve traffic congestion at the proposed Redskins Stadium at the Wilson Farm Property in Prince George's County." 1996 Md. Laws, Ch. 13 at 935-36, Item No. 29.01.01.02, Supplemental Budget No. 1 Fiscal Year 1997. The Supplemental Budget Item followed an Opinion by this office in which we concluded that the Secretary of Transportation could provide a grant for the construction of a parking lot if the supplemental budget bill provided language that "would recognize the special problem of traffic congestion that would be posed by a crowd at a football game if parking were not adequate at the stadium itself." 81 Opinion of the Attorney General ______ (1996) [Opinion No. 96-006 (February 15, 1996) at page 6].
(B) The Budget Bill also authorized the expenditure of up to $70.5 million for the "construction of State or County roadways or grants pertaining to the infrastructure required as a result of the proposed Redskins Stadium . . . ." Chapter 13 at 758-767. The Legislature specified how the money was to be spent in a schedule attached to its authorization. (A copy of the schedule is attached to this Opinion.) That schedule reflected the agreement among the parties that the construction of the infrastructure consisted of three designated projects: (i) the On-Site Infrastructure, (ii) the County Constructed Off-Site Infrastructure and (iii) the State Constructed Off-Site Infrastructure.
(C) Finally, H.B. 1232, which was later enacted as Chapter 600, dealt with, among other things, the applicability of Division II of the State Finance Procurement Article to the State Constructed Off-Site Infrastructure. Specifically, Section 6 of Chapter 600 provides that, except for the Subtitle pertaining to minority business participation, "the provisions of Division II of the State Finance Procurement Article do not apply for purposes of the design and construction of State highways relating to the Redskins Stadium project in Prince George's County." Included in Division II is the Subtitle pertaining to the payment of prevailing wages.
Roadways and Parking Lots Are Public Works
A contractor or subcontractor under a "public work contract" is required to pay no less than the prevailing wage rate, as that rate is determined by the Commissioner of Labor Industry. STATE FIN. PROC. § 17-214. A "public work" means a "structure or work, including a bridge, building, ditch, road, alley, waterwork, or sewage disposal plant, that:
(i) is constructed for public use benefit; or
(ii) is paid for wholly or partly by public money." STATE FIN. PROC. § 17-201(j).
What is clear is that roadways to be constructed under the Agreement of March 13, 1996 are public works. While the parking lot, a component of the On-Site Infrastructure, is not one of the delineated examples in § 17-201(j), it is certainly a work which is of the same nature as a road or alley. The parking lot is also paid for wholly or in part by State money, and to the extent the General Assembly justified the Departmental grant as an effort to relieve traffic congestion, the parking lot has a public use or benefit. In short, while the parking lot will ultimately be privately owned, it is constructed for public use with public money and is, therefore, a public work under § 17-201(j).
 On-Site Infrastructure Construction is Subject to Prevailing Wages
The Redskins' counsel argues that the On-Site Infrastructure is really part of the overall project on the Redskins' property, and that, as a result, when combining the costs of the Stadium construction with the On-Site Infrastructure construction, the State money used for construction does not constitute 50% or more of the overall costs. This 50% threshold is significant since it is necessary to determine if a "public body" is responsible for requiring the payment of the prevailing wages. A "public body" is defined as, among other things, a political subdivision with respect to the construction of a public work "for which 50% or more of the money used for construction is State money . . . ." STATE FIN. PROC. § 17-201(i)(iii)(2). Since the County is the recipient of a State grant, which the County will in turn use to reimburse JKC Stadium, we must determine if the public work under construction is funded by 50% or more of State funds in order to conclude if the Prevailing Wage Law is applicable. If the public work is defined to include the costs of the stadium construction, the 50% threshold is not achieved. If, however, the public work is defined as including the parking lots and roadways within the Redskins' property lines, but exclusive of the stadium, then more than 50% of the funding is State funding and the Prevailing Wage Law applies.
The State Prevailing Wage Law was modelled after the federal Davis-Bacon Act, 40 U.S.C. § 276 a-a5, and enacted "to protect local contractors and workers against what was deemed to be unfair and predatory competition" and to stabilize "wage rates generally prevailing in the locally based construction industry." Barnes v.Commission of Labor Industry, 45 Md. App. 396, 403,affirmed 290 Md. 9 (1981). The law is a remedial measure which should be liberally construed to carry out the purpose of the Act and to strictly and narrowly construe any exemptions from coverage. 71Op. Att'y Gen. 255, 262 (1986). That purpose, as expressed in our previous Opinion, is that "where the work is of a public character, is funded by the State, and is carried out by agents acting under the State's authority, it belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf." 71 Op. Att'y Gen. 255, 262, citing, Atkin v. Kansas, 191 U.S. 207, 222-23 (1903).
It is with this backdrop that we must review whether the On-Site Infrastructure is subject to the Prevailing Wage Law. The State On-Site Infrastructure Fund is comprised of a Departmental grant to the County for construction of roads and parking lots. The On-Site Infrastructure is a component of the overall agreement and is defined and funded in a manner separate from the Redskins Stadium itself. The County is responsible for making payments to JKC Stadium and for inspecting the On-Site Infrastructure. In contrast, the County has no responsibility for making payments to Cooke for the stadium construction or for inspecting the stadium, other than for purposes of issuing a use and occupancy permit. The agreement and the attendant responsibilities by the County indicate that the On-Site Infrastructure was a public work separate from the stadium, a private construction project, and that the County is the public body responsible for administering the Prevailing Wage Law provisions[3].
Finally, to the extent there is any ambiguity as to whether the On-Site Infrastructure is subject to the Prevailing Wage Subtitle, the Secretary of Transportation has clarified the issue by advising the Redskins' representative that MDOT intended to require that prevailing wages be paid for On-Site Infrastructure as a condition of its grant to the County. The agency "has the initial responsibility for determining whether a particular contract is subject to the Davis-Bacon Act." UniversitiesResearch Ass'n v. Coutu, 450 U.S. 759, 760 (1981). Similarly, MDOT is the party which determines the scope of the project, and given the structure of this agreement, the determination by the Secretary is more than reasonable.
Off-Site Infrastructure
Your letter raises the issue of the applicability of the Prevailing Wage Subtitle to the Redskins Stadium infrastructure and the surrounding roads because of the passage of Chapter 600 of the 1996 Laws of Maryland.
Your question is whether Chapter 600 exempts the infrastructure construction from the Subtitle's requirements. Section 6 of Ch. 600 provides:
 SECTION 6. AND BE IT FURTHER ENACTED, That, notwithstanding any other provision of law, except as provided in Title 14, Subtitle 3 of the State Finance and Procurement Article, the provisions of Division II of the State Finance and Procurement Article do not apply for purposes of the design and construction of State highways relating to the Redskins stadium project in Prince George's County. Provided, however, that throughout all phases of construction on interstate and interstate related projects, the Maryland Department of Transportation shall maintain management control similar to all other highway projects to ensure compliance with all federal and Department specifications, design standards, safety standards, operational standards, and quality assurance.
It is clear from the language of Section 6 that the exemption is not applicable beyond the "design and construction of State highways." The exemption does not apply to County highways or other public works. Therefore, the design and construction of the On-Site Infrastructure (parking lot and County highways) and the County Constructed Off-Site Infrastructure (County highways) are not exempted from the Prevailing Wage Subtitle under Chapter 600. In fact, the fact that the exemption is so narrowly drawn infers that the Legislature intended to apply the Prevailing Wage Law.
Also, the exemption of the State highways from Division II should be read as to its intent, namely, to give the State Highway Administration as much flexibility as it may desire to design and construct State highways of a high quality and at as low a cost as it deems appropriate within the limits of the appropriation. For example, while the exemption permits the SHA to award the construction contract by means of a sole source procurement, if it so chose, there is nothing to prevent SHA from complying with the competitive sealed bid process under which it would normally proceed pursuant to STATE FIN. PROC. § 13-103. Similarly, if SHA chose to negotiate with a construction contractor to incorporate the normally required clauses of STATE FIN. PROC. § 13-218
(termination and other clauses) and 13-219 (non-discrimination clauses), the language in Ch. 600 is not intended to prohibit those negotiated items; it merely does not require that those provisions be contained in the procurement contract.
In the case of the wages to be paid a contractor for the State highways surrounding the Redskins Stadium, SHA is not required to ensure that those wages are the prevailing wage as determined by the Commissioner of Labor Industry. SHA is certainly free to negotiate wage rates as part of its procurement of the construction services — it is simply not required to ensure that a specified wage rate is paid. In fact, in a letter dated April 8, 1996 from Governor Glendening to Senator Hoffman, the Governor stated "that it is not the Administration's intent to circumvent the need to pay fair wages to the workers on this project. Rest assured that the Senate's concern will be taken into account when negotiating the final grant agreement with the Department of Transportation." It is essentially up to MDOT and SHA to negotiate what is "fair." In short, if a prospective contractor, whether JKC Stadium or anyone else, chooses not to pay the wage rates proposed by SHA, the contractor may either choose not to contract with SHA, or somehow persuade SHA to change the proposed wage rates.
Conclusion
For the above reasons, it is our opinion that the exemption from the Division II of the State Procurement Law provided under Ch. 600 does not prohibit SHA from negotiating wages equivalent to prevailing wages as a matter of contract. Also, while it is clear the County Constructed Off-Site Infrastructure is subject to the Prevailing Wage Subtitle, the structure of the agreement of March 13, 1996 and the language in the Budget and Supplemental Budget supports the Secretary of Transportation's conclusion that the On-Site Infrastructure was also subject to the requirement that prevailing wages be paid by the construction contractor.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Norman E. Parker, Jr. Deputy Attorney General
 Edward R. K. Hargadon Assistant Attorney General
[1] While during negotiations the Redskins estimated that the transportation costs would approximate $38 million, MDOT estimated the costs at $31.2 million. The grant for the On-Site Infrastructure will be no more than $31.2 million, except that up to $3 million in any surplus on the State Constructed Off-Site Infrastructure may be used for cost overruns for the On-Site Infrastructure or the County Off-Site Infrastructure. In addition, any excess from the $12.5 County Constructed Off-Site Grant may be used for the construction of the On-Site Infrastructures. However, the total amount of State funding is capped at $70.5 million.
[2] The County also agrees to contribute to the overall public road construction by authorizing MDOT to withhold $1,000,000 per year for a period of time necessary to amortize the $12.5 million dollar grant assuming an interest rate equal to that rate which would be payable on Consolidated Transportation Bonds.
[3] While our office did previously opine that a State contracting agency may not avoid the Prevailing Wage Law by arbitrarily breaking down contracts into units of less than $500,000 which are not subject to the Prevailing Wage Law, we recognized that each situation must be resolved on a case-by-case basis and in a way which best serves the remedial intent of the statute. 71 Op. Att'y Gen. 255, 263, n. 4 (1986). The intent of the law is best served by applying the Prevailing Wage Law to the On-Site Infrastructure. In the examples presented in the previous Opinion, the agency's action did not result in the application of the law. In the case of the On-Site Infrastructure, the law could be applied and its intent given effect by defining the public work as the On-Site Infrastructure exclusive of the Redskins Stadium.
 *Page 26